660 P.2d 57

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Joseph Napoleon ROCQUE,
Defendant-Appellant.**

**Nos. 13363, 13432.**

Supreme Court of Idaho.

March 2, 1983.

Joseph Napoleon Rocque, pro se.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Thomas Vest, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SHEPARD, Justice.

This is a consolidated appeal from an order of the district court revoking probation and committing defendant-appellant Rocque to the custody of the Board of Corrections and from a conviction of the crime of escape. We affirm the order revoking probation and reverse the conviction of escape.

In March, 1977, defendant-appellant, Joseph Napoleon Rocque, pleaded guilty to and was convicted of the crime of burglary in the first degree. Thereafter the district court entered an order sentencing Rocque for a term not to exceed ten years "provided, however, that this judgment shall be and is hereby suspended and defendant be placed on probation for ten years * * *." Among the terms and conditions of probation, Rocque was "remanded to the sheriff's office of Ada County for a period not to exceed six months, work release program," required to make restitution and refrain from the use of alcohol.

Rocque entered into the "work release" program and, insofar as the sparse record before us indicates, he spent nights in the Ada County jail and was released during the daytime. The record indicates he was

released from the jail in the mornings, provided his own transportation and worked as a sheetrock drywall installer. From his wages he was required to pay "fees" which in part were to defer the costs of his lodging at the jail. After approximately three months, Rocque left the jail one morning ostensibly to go to work. He did not return to the jail that evening, but rather left Ada County and the State of Idaho for Spokane, Washington.

On his arrival in Spokane, he enrolled himself voluntarily in a 90-day alcohol therapy program, which he successfully completed. Thereafter he enrolled in a community college program and was employed at the alcohol rehabilitation center as a counselor. Some time later, he was stopped for a minor traffic infraction and when the authorities learned of his fugitive status, he was detained for extradition. Rocque resisted extradition and the Washington authorities offered to assume Rocque's probationary supervision through the interstate compact on transfer of probationers and parolees. That offer was evidently refused by the Idaho authorities. After additional travels to Montana and Oregon, Rocque was ultimately extradited to Idaho.

In April of 1979, the order of March, 1977, which had suspended execution of sentence and placed Rocque on probation, was revoked. The previous sentence of ten years was commuted to seven and one-half years and Rocque was committed to the Board of Corrections.

Meanwhile, in February, 1979, following a preliminary hearing, an information had been filed against Rocque charging him with the crime of escape under the provisions of I.C. § 18–2505, to-wit: "That the said defendant, Joseph N. Rocque, on or about the 23rd day of June, 1977, in the County of Ada, State of Idaho, did while convicted of a felony, and while working outside the walls of the Ada County jail, escape from the Ada County jail." Following trial at which he was found guilty, Rocque was convicted and sentenced to the custody of the State Board of Corrections for a period of two years, to commence at the completion of the sentence he was then serving.

Rocque filed this appeal pro se from the order of the district court revoking probation and from his conviction for the crime of escape. Rocque has pursued the appeal pro se without the assistance of counsel. Although Rocque initially appealed from the order of the district court revoking probation, he, in his brief, concedes that such order was correct and we do not consider that assignment of error.

As to the conviction for the crime of escape, under the unusual circumstances presented here we deem the evidence insufficient to support that conviction and hence reverse. Rocque's "confinement" in the jail during evening hours was the result of a voluntary probation agreement and consequently when he failed to return to the jail he was in breach of the terms of his probation. However, his failure to return to the jail was not an "escape" from custody since he had not been sentenced. This result obviates any need for discussion of the law pertaining to custody or any disposition of Rocque's assertions of error.

Reversed and remanded for further proceedings consistent with this opinion.

BAKES and BISTLINE, JJ., McFADDEN, J. (Ret.), and McQUADE, J. Pro Tem., concur.

BISTLINE, Justice, specially concurring.

At first blush this appeared to be a rather routine pro se [1] appeal brought here by an inmate who reserved strong doubts that he should have been awarded two years in the penitentiary for a felony escape of which he did not believe himself guilty.

The brief of the Attorney General argues a State contention, one never advanced at

---

1. The escape charge was tried to a jury whereat Rocque was well represented by the public defender. When sentenced following conviction by the jury, the trial court advised Rocque of his right to appeal, of the time limitation, and of his right to appellate counsel at public expense. Yet Rocque appealed *pro se.*

trial, that where Rocque had been sentenced and placed on probation, that he was a "probationer." From that premise, the soundness of which is not open to dispute, it is said that because "both the State Department of Corrections and the State Commission of Pardons have control over the probationers," such status amounts to Rocque's being in "custodial control." From there the point is made that he violated his probation—which again is sound—but upon which predicate it is said that "[d]epending on how the offense charged in the information of March 12, 1979, is interpreted, he is also guilty of the escape, . . . and he absconded from *custody* . . . ." (Emphasis original.) This Court just recently, but prior to the writing of the State's brief, dealt extensively with the meaning of "abscond" in *three* opinions. *See State v. Wagenius,* 99 Idaho 273, 581 P.2d 319 (1978). Suffice it here to say that "absconding" cannot be equated with the crime of escape. The information and its interpretation, or more aptly its sufficiency, will be taken up *infra.* It is noted at this juncture, however, that the State's brief suggests that the charge of the information couched in terms that Rocque did "escape from the Ada County Jail" is of no moment. The State contends that the essential element is not the place, "but the *unauthorized* nature of the departure from *custody.*" (Emphasis in original.) The State's brief candidly concedes that the alleged escape "was also not strictly from the jail, it was from the workout situation *outside* the jail." (Emphasis in original.) From which statement the State returns to its theme in defense of the conviction that a better information would have alleged that the escape was "from the custody of the director of the Department of Probation and Parole (or 'district court')." It will be seen that this novel theory is not the basis upon which Rocque was prosecuted and for which he served time in the penitentiary. Nor does that theory have any statutory basis whatever.

Where the prosecutor and the State entertained divergent views for prosecuting Rocque and sustaining that conviction it is thus seen that this case is anything but routine. Justice Shepard's opinion is sound, and I write not just because of the injustice done this particular person, but because I see that prosecutors and district judges need a word of caution: A defendant cannot be sentenced to prison and granted a probation while execution of that sentence is suspended, and then be sentenced to the county jail—which was not done here, although the prosecution assumed that it was and unlawfully prosecuted Rocque for an escape he did not commit.

To begin with, it is important to take accurate note of the factual background. Rocque was on probation when he "escaped." He was not, pursuant to sentence, confined in the jail or pentitentiary, and he was not in the custody of an officer, and he was not working "outside the walls" on any jail or penitentiary farm or at any factory. He was on probation awarded to him following imposition of a ten-year sentence for burglary—the execution of which would be suspended for so long as he did a good probation.

It is true that he was a roomer and boarder at the Ada County jail during his probation, and equally true that he left one morning to go to work at private employment, and that he did not return that night. This was his alleged escape. I agree with Justice Shepard that it was not such.

It was, however, a violation of the terms of his probation, a matter upon which there is no disagreement. The prosecutor so saw his conduct as being a violation and sought a bench warrant, his motion for such stating the following:

"That on the 13th day of December, 1976, the above-named defendant, was arraigned before this Court upon a charge of Burglary in the First Degree; that on the 7th day of March, 1977, the above-named defendant pled guilty to said crime and requested probation, and on the 21st day of March, 1977, this Court granted said request and placed said defendant on probation for a period of ten (10) years;

*"That as a condition of said probation, this Court required, and said defendant agreed,* that he, the said defendant, would respect and obey all laws of the State of Idaho, and at all times conduct himself as a good citizen, and six months in the Ada County Jail, no alcohol at all, must submit to mandatory urinalysis and blood alcohol test upon request and pay restitution.

"That the said defendant, violated the above-mentioned term of his said probation and probation agreement by

. . . .

3. Walking away from the Ada County Jail on or about June 23, 1977; . . . ." (Emphasis added.)

The prosecutor's statement in his motion was essentially a sound statement; Rocque did agree to six months in the county jail along with his promise to stay away from alcohol and his concomitant promise to submit to tests showing his compliance. He did agree to make restitution of two hundred and some odd dollars—apparently the value of the stolen property. As I say, the prosecutor was entirely correct in calling the walk-away a violation of probation. This is important. That is all that it was.

The order of probation (with Rocque's acceptance thereon), was in the usual form, and was the basis of the prosecutor's request for a bench warrant for its violation; it contained these special conditions:

"(1) Defendant remanded to the Sheriff's Office of Ada County for a period not to exceed six (6) months, work release program in conjunction with this commitment. (2) Make restitution in the sum of $250.67. (3) Refrain from the use of alcohol—required to submit to a Blood Alcohol/Urinalysis."

When Rocque appeared before the court on the violation charge his probation was revoked, his ten-year sentence was commuted to seven and one-half years, and he was sent off to serve his time, the court properly giving him credit for confinement time following his arrest up until the time of his guilty plea, the imposition of the suspended ten-year sentence, and his release on proba-

tion—and, compassionately, also giving him credit for the two months he had agreed to spend and did spend at the county jail while working out days at private employment.

The judgment of conviction of burglary contains the imposition of the ten-year sentence, its suspension, and the grant of probation:

"That whereas the said defendant having been convicted in this Court of the crime of Burglary in the First Degree

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED That the said defendant Napoleon Rocque, Jr., is guilty of the crime of Burglary in the First Degree and that he be sentenced to the Idaho State Board of Correction under the Indeterminate Sentence Law of the State of Idaho for a term of not to exceed ten (10) years; said term to commence 21st of March 1977;

"PROVIDED HOWEVER, That this judgment shall be and is hereby suspended and defendant be placed on probation for 10 years, standard terms and conditions and special conditions as follows: (1) Defendant remanded to the Sheriff's Office of Ada County for a period not to exceed six (6) months, work release program in conjunction with this commitment. (2) Make restitution in the sum of $250.67. (3) Refrain from the use of alcohol—required to submit to a Blood Alcohol/Urinalysis."

In the clerk's transcript, p. 29, is this startling document which purports to infer that Rocque was handed two separate sentences for his burglary, ten years in prison, suspended, as well as six months in the county jail:

"To the Sheriff of the County of Ada, State of Idaho, Greetings:

"WHEREAS,' Napoleon Rocque, Jr., having been duly convicted in our District Court of the Fourth Judicial District of the State of Idaho, in and for said County of Ada, of the crime of Burglary, in the First Degree *and judgment having been pronounced against him that he be punished by imprisonment in the County Jail* of the County of Ada, State of Idaho, for a period not to exceed six (6) months.

"The Defendant Napoleon Rocque, Jr., was then remanded to the Custody of the Sheriff of the County of Ada, State of Idaho, for a period not to exceed (6) months. All of which appearing to us of record, and a certified copy of the judgment being endorsed herein and made a part hereof;

"*NOW, THIS IS TO COMMAND YOU, The said Sheriff of the County of Ada, to take and safely keep and imprison the said Napoleon Rocque, Jr., convicted and sentenced aforesaid,* in the County Jail of the said County of Ada, State of Idaho.

"And these presents shall be your authority for the same. Herein fail not.

"WITNESS: Hon. Robert M. Rowett, Judge of the said District Court, and the Court House in the said County of Ada, this 22d day of March, 1977.

"ATTEST My hand and the seal of said Court, the day and year last above written.

/s/ Clarence A. Planting
Clerk
By /s/ Hazel Hampton
Deputy Clerk"

(Emphasis added.)

Apparently a deputy clerk was of the legal opinion that Rocque was indeed sentenced to the county jail. He was not. Contemporaneously with commencing proceedings to arraign Rocque for his failure to abide by the terms of his probation by walking away, the prosecutor initiated a charge of felony escape. Following a preliminary hearing, an information was filed against Rocque in this language:

"That the said defendant, JOSEPH N. ROCQUE, on or about the 23rd day of June, 1977, in the County of Ada, State of Idaho, did while convicted of a felony, and while working outside the walls of the Ada County Jail, escape from the Ada County Jail."

And, upon this sparse allegation, Rocque was put to trial, and the county put to the expense thereof, notwithstanding that no judge of the state of Idaho had ever sentenced Rocque to the county jail, and he was not in the proper custody of the Ada County Sheriff or jailer when he violated his agreement of probation.

The Idaho statute is quite explicit:

"18–2505. Escape by one charged with or convicted of felony.—Every prisoner charged with or convicted of a felony who is confined in any jail or prison including the state penitentiary, or who while outside the walls of such jail or prison in the proper custody of any officer or person, or while at work in any factory, farm or other place without the walls of such jail or prison, who escapes or attempts to escape from such officer or person, or from such jail or prison, or from such factory, farm or other place without the walls of such jail or prison, shall be guilty of a felony, and upon conviction thereof, any such second term of imprisonment shall commence at the time he would otherwise have been discharged."

Concededly, Rocque had been convicted of a felony. In fact he had been sentenced to prison for ten years for that felony. But, that sentence was in suspense. Rocque was but a probationer who had agreed to a provision of probation that he would stay at the jail nights and weekends while he worked out and made his way out of his addiction to alcohol. Was he a jailhouse prisoner? Assuredly not. Was he confined? Not in the sense of the statute. When he walked away was he free to do so? Absolutely yes. When he did not return from his private employment was he escaping from jail or from any officer? Absolutely not, but was subjecting himself to a charge of probation violation. Does the "factory, farm or other place without the walls of such jail" encompass other than prison or jail related duties? I think not, and have *never* heard such a proposition advanced. Did he intend to commit the crime of escape. Again, no.[2]

---

**2.** Defense counsel also was of the view that *State v. Marks,* 92 Idaho 368, 442 P.2d 778 (1968) (No specific intent "to evade the due course of justice" need be proven in order to establish commission of crime of escape) was wrongly decided. The validity of that holding

Did the information even charge the commission of a public offense? Again, I think not. Some members of this Court have held that the failure to sufficiently charge a public offense is jurisdictional and can be raised at any time. *State v. Lopez,* 98 Idaho 581, 570 P.2d 259 (1977) at pages 585 and 590 of 98 Idaho, Bakes, J., State's brief, pp. 12–13..

Putting such considerations aside, proceedings at Rocque's escape trial must be examined. Apparently everyone at trial succumbed to the prosecutor's assumption that Rocque was serving a six month "sentence" in the county jail—notwithstanding that the prosecutor was at the same time using Rocque's failure to return as a probation violation.

Defense counsel, in an *in limine* motion clearly accepted as a fact that Rocque was under sentence of six months, but went on to explain the defense he would make:

"Basically, we are not disputing that in June of 1977 that my client, Mr. Rocque, was incarcerated in the Ada County Jail; that he was doing six months in the Ada County Jail *pursuant to sentence imposed* by Judge Rowett in March of 1977.

"Basically, our defense will be this: It's a defense of necessity, under the Idaho Code. And it would be that my client at the time *he was sentenced* on March, 1977 was given six months to serve, under the Idaho Code. And this code section I have submitted to the Court in the form of a Jury Instruction. I believe the Court is aware of that. In the Idaho Code, any time spent in incarceration prior to sentencing—it's mandatory that that amount of time be credited to the sentence.

"*When Mr. Rocque was sentenced* in March of 1977, he had been incarcerated since late November or early December of 1976, which would have ended his six-months jail sentence in May, the end of May of 1977. And he, in fact, was not released in May of 1977. The jailers were under the assumption that he was not to be released until much later; the six months beginning in March of 1977.

need not be this day addressed, but as some forewarning, I suggest that at an appropriate

"Our evidence we present will show that the reason he left in June of 1977— he had attempted to contact his attorney at that time and was unable to get any help in rectifying this. He attempted to contact the Judge, the Judge's clerk. And he was not given any help. He was unaware of the proper legal matter or legal avenue to bring this up before the Judge. And he was an alcoholic—he is an alcoholic. He needed treatment in order to maintain his ability to keep working. And he was compelled—And he wasn't getting the treatment in the Ada County Jail. And he was compelled at that time to leave the Ada County Jail to seek treatment for his alcoholic problems. After leaving the Ada County Jail, he went to Spokane, where he, in fact, enrolled and successfully completed an alcoholic program. He has continued his education; and he has, in fact, stayed on the wagon since that time.

"Basically, our defense would be that Mr. Rocque was entitled under Idaho law for credit for time served in jail prior to the judgment of conviction to be counted for the jail time of the six months he was to serve. He served six months in the Ada County Jail at the end of May, 1977. And at that time, he was entitled to his freedom. One does not commit the crime of Escape when he regains the freedom he is lawfully entitled to.

"Our argument is that he had a right to be released after six months in jail, and he should not be punished for taking it into his own hands to regain his freedom. He did not use any force or commit any destruction in obtaining this freedom. He simply did not return to jail from a work-out situation." (Emphasis added.)

It is easy to understand from the documentation, especially the questionable document directed by a deputy clerk of the court to the Sheriff, how the defense counsel was misled into accepting that the trial court had handed Rocque *two* sentences—al-

time the *Marks* rationale should be reexamined. *See* 30A C.J.S. Escape § 6(b) (1965).

though he had not done so. The prosecutor's response shows an interesting distinction to be drawn between sentences:

"This particular motion, which is limited to obtaining the Court's ruling as a matter of law on how we are going to proceed as far as the evidence is concerned, doesn't bother me that much. But my point would be that the statute that we are talking about that gives the man credit for time served only applies *when the person is actually sentenced either to the penitentiary or to the jail on a straight sentence.*

"*This particular case, the defendant was not sentenced.* In fact, the judgment of conviction—I don't believe this court has in its file at this time—entered by Judge Rowett, was that *this defendant's sentence was completely suspended.* He was placed on probation for ten years. Among other things in this particular matter, *he was given a six-months jail sentence* as a condition of probation, within which time he was to seek alcohol treatment, he was to pay restitution, and he was to do other matters within that six month period of time, commencing March 21 of 1977.

"It's our position that as a matter of law the particular sentence that applied, or the statute Counsel refers to for credit for time served, does not apply to a term of probation where a judge can set whatever reasonable limits in terms of probation are appropriate. Therefore, he does not get credit for time served.

"Mr. Rocque, as I believe the file would indicate, in front of Judge Rowett—His probation has been violated as a means of this violation of walking away. Judge Rowett certainly did not agree with that in his revoking of probation, that the defendant was to have gotten credit for time served on the term of probation. And the defendant was incarcerated, as he is currently now, in the Idaho State Penitentiary. So, certainly it was the position of Judge Rowett that that wasn't his intent that he has a right to make whatever reasonable terms and conditions of probation as are appropriate, given the fact this defendant was working and was supposedly to have been paying off restitution in this matter.

. . . .

"This was not a commuted jail sentence. If this were a commuted jail sentence of one year in the Ada County Jail, then I would agree with Counsel's position that this is a matter of law; or if this were a penitentiary sentence, that he gets credit for time served. Since he has now been violated on his probation, the judgment has been entered; and the term, I think, has been reduced from ten years to eight years. But once he is sent to the penitentiary, he has been given credit for time served, as I understand it, for time spent in the Ada County Jail, not only prior to the entry of judgment on March 21 of 1977, but the other time he spent in jail as a result of the terms and conditions of probation. *So, it's our position that he was not sentenced as the law requires* to give him that." (Emphasis added.)

It is readily apparent that the deputy prosecutor who was blessed with the duty of pressing the escape charge was given a difficult task. This is reflected in his statement to the trial court—a veritable masterpiece of self-contradictions:

"The defendant cannot use such a defense as he offers because he wasn't entitled to presentence time. He wasn't so entitled because that statute 'only applies when the person is *actually sentenced* . . . on a straight sentence' (whatever a straight sentence is) . . . '[T]he defendant was not sentenced . . . . This defendant's sentence was completely suspended . . . among other things . . . he was given a six months sentence as a condition of probation . . . the particular sentence that applied. . . .'" (Emphasis added.)

The blatant facts of the thrilling and harrowing escape are found in the prosecutor's opening statement to the jury prior to the introduction of any evidence:

452

"In this particular case, we are accusing the defendant, Mr. Rocque, of Escape. That is the crime under Idaho Code 18–2505. The Court will define for you later what the elements of that is.

"We intend to prove to you that in March of 1977, the defendant was placed on probation by District Judge Robert Rowett here in this jurisdiction; that pursuant to that judgment, he was given a suspended penitentiary sentence; *that he was placed in the Ada County Jail for six months,* given workout privileges; and was ordered to make restitution; and to pursue various other specific conditions of that probation. The indication will be that subsequent to that sentencing by Judge Rowett on the felony crime that he pled guilty to, *that the defendant was housed in the Ada County Jail.* At that time, the Ada County Jail was upstairs here about three or four floors above where we are at the present time. And the defendant participated in a work-out type procedure where he was allowed to leave the jail to go to a job to work outside the walls. At the conclusion of the time allotted for his job, he was to return to the Ada County Jail to spend the remainder of his time—His nights, his weekends, *whatever time not spent on the job would be spent pursuant to the special conditions of his probation.*

"The indication will be that on June 23 of 1977, this defendant did not return from his work-out. This is not a case where we are accusing the defendant of assaulting any guard, that is to make an escape; committing any battery against any individual; nor are we indicating that he sawed his way through the bars, or anything like that. This is basically an escape. We will indicate to you that it is a walk-away. That is, he did not return from his work-out provisions." (Emphasis added.)

The prosecutor's statement, i.e., that Rocque was placed on probation and *"placed in the Ada County Jail",* otherwise put— "housed in the Ada County Jail" where after work "he . . . spent the remainder of his time pursuant to the special conditions

of his probation"—all are reflective of the prosecutor's understanding that Rocque was not confined there under any sentence, but as a condition of probation. Nor can scant attention be given to the fact that not one of the State's witnesses made any claim that Rocque was confined in the Ada County Jail serving a sentence. On the contrary, the prosecutor placed in evidence the judgment of conviction of burglary—set forth hereinabove—showing that the sentence meted out to Rocque was ten years in the prison, but that it was suspended, and probation allowed. State's Exhibit # 1. The judgment, and the order of probation as well, State's Exhibit # 3, both speak in terms of Rocque being *remanded* to the jail as a term of probation—but in neither instance was it said that he was *sentenced* to six months in jail.

I know not what others might make of the word "remanded," but it is not the same as "sentenced"—which in our profession is a word of art, having been with us since the Criminal Practice Act of 1864, and even given recognition in the court's rules.

Rocque, of course, was living in the county jail prior to his conviction of burglary, and had been there for four months. He was confined there, not under any sentence, but awaiting disposition.

At the end of the sentencing hearing, when the trial court offered probation and Rocque accepted it, he was indeed obliged under the terms thereof to take up residence at the jail. But he was not sentenced to jail; rather he was, and correctly so, remanded to jail—which most attorneys I am certain understand as being sent back to the place from whence he came. Search though I may, I find no court having ever viewed "remanded" as interchangeable with sentenced. Black's Law Dictionary has done no better. Where a defendant is not free on bail, following an appearance in court, it does seem to be acceptable for the court to instruct that the defendant is remanded to the Sheriff or to the jail until his presence in court is again required. But that is the extent of it in such context.

Thus, it becomes quite obvious that Justice Shepard correctly states that there is no evidence upon which to sustain a conviction of escape, and that judgment must be reversed. More than that, examined under the view of Bakes, J., set forth in *Lopez, supra,* the information was insufficient to give the trial court jurisdiction.

## II.

There is more to this case than the extreme injustice done to Rocque. By that I suggest the responsibility of this Court to insure that henceforth there be no prosecution for "Rocque escapes." It is difficult to believe that neither the prosecuting attorney, in the first place, nor the office of the Attorney General, in the second place, did not somewhere down the line realize that Rocque broke no law in violating his parole. He did not, as the attorney general's office has suggested "escape" from the custodial control of his probation officer. He had not, as the prosecutor suggested, ever been "sentenced" to the county jail. He was staying there in accordance with the terms of his probation agreement. There was the unfortunate document signed by a deputy clerk reciting that Rocque had been sentenced—which was totally incorrect. Somehow that deputy clerk had been led to believe that Rocque could all at one time for the same crime be sentenced twice, once to the penitentiary, and also to the county jail. Surely the deputy clerk did not act on her own understanding of the law, and it is likely that she, and possibly the offices of the Attorney General and the Ada County Prosecutor, may have been misled by this Court's opinion in *State v. Wagenius,* 99 Idaho 273, 581 P.2d 319 (1978). Therein, pronouncement of judgment was withheld and probation granted on special conditions, which included that the defendant Wagenius be incarcerated in the Kootenai County jail for thirty days: her probation was to last for three years, after which time the charges were to be dismissed if she completed a successful probation. The Court's opinion authored by Justice Bakes recites that "Wagenius appealed to this Court from the imposition of that *sentence.*" 99 Idaho

at 275, 581 P.2d at 321 (emphasis added). Further on the Court's opinion states:

> "While on the record which we are reviewing a thirty day jail *sentence* might appear to be harsh, we do not have the benefit of personally viewing the defendant as the trial court did at the time of the plea and *sentencing.*"

99 Idaho at 282, 281 P.2d at 328 (emphasis added).

In what appears to have been a wasted expenditure of precious time, one member of the Court endeavored to illustrate that the district judge had not imposed any sentence:

> "Mr. Hood's [presentence] report noted Wagenius' totally innocuous prior record of one minor traffic violation, to-wit: inattentive driving. He concluded that she was in need of vocational rehabilitation and suggested that she consult with a volunteer counselor, and that she pursue a G.E.D. certificate. He recommended Wagenius as a candidate for a withheld sentence probation and suggested restitution as to outstanding dishonored checks.
>
> "At the hearing the trial court expressed concern that it would be impossible for her to make restitution out of her $218 income, the amount of her monthly check. The deputy prosecuting attorney at this point interjected the proposition that, in the last six months, he had been seeing more often where welfare individuals were 'getting into the check-writing area.' As to Ms. Wagenius, however, he stated: 'She can find a job and make restitution.' Nevertheless, the trial court reasoned:
>
> > " 'THE COURT: This does pose a dilemma for the Court in trying to figure out what to do and it would seem only fair that a requirement of restitution be made but at the present level of income it would appear totally impossible. I am concerned as you express too, Mr. Brown, people cannot expect just because they may be in difficult financial stress to go out and write checks and not expect to face the consequences. Mrs. Wagenius, it will

be the order of this Court the judgment and sentence in this matter be withheld for a period of three years. *The conditions under which the sentence is to be withheld are as follows. That you first will be incarcerated in the Kootenai County jail for a period of thirty days.* Upon completion of that period, under the direction of the State Board of Corrections the conditions for continued withholding of sentence and judgment that you not violate any laws of this state, city, or county therein. (Emphasis supplied.)'

"On a point of legal theory, we are not, strictly speaking, engaged in 'sentence' review. Rather, as the foregoing remarks show, 'sentence' was not imposed, but specifically was withheld. 'Incarceration' was ordered, as a part of her probation. Justice McFadden's dissent from Part IV of the Court's opinion raises very serious doubts that 'incarceration' of any kind, absent a judgment of conviction, is constitutionally permissible."

99 Idaho at 285–86, 581 P.2d at 331–32. Although we are supposedly a collegial court, the author of the Court's opinion apparently did not consider the discrepancy of any great moment, and the Court's opinion remained unchanged. Unfortunately, digest annotators, and opinion reporters are not concerned with anything but a court's majority opinion when the digest annotations are updated. Unfortunately, busy practitioners initially resort to headnotes and annotations. *See* Headnote 4, *Wagenius,* 99 Idaho at 273–74, 581 P.2d at 319–20; 4 Idaho Digest, annotated, 1983, pocket part, p. 75; 19 West's Pacific Digest, p. 370:

"Statute providing that following conviction or entry of guilty plea court may withhold judgment on such terms and for such time it may prescribe authorizes trial court to impose punishment, fines or imprisonment, assess costs and require restitution as conditions of a withheld judgment. I.C. § 19–2601; Rules of Criminal Procedure, rule 32(d).

"*State v. Wagenius,* 581 P.2d 319, 99 Idaho 273."

What it all comes to, then, is that irrespective of this prosecutor's highly questionable prosecution of Rocque on a charge of felony escape, and irrespective of the attorney general's rather frivolous defense of that prosecution, Rocque was prosecuted, and it is at least inferrable that some of the impetus for that wrongful prosecution is attributable to careless language in the *Wagenius* opinion. There may yet be other persons who, granted probation which includes a period of incarceration, will be wrongfully prosecuted—for which reason it is encumbent upon this Court as a whole, not just this one writer—to let it be clearly known that escape charges simply cannot be laid for that which is but violation of a term of probation. I submit that the failure to so advise the prosecutors, magistrates, and district judges, is to expose them to civil liability for violation of civil rights.

Although at the time of *Wagenius* I leaned toward the view that a defendant could, by accepting the tendered grant of probation, and signing a probation agreement, consent to spend some time in a county jail so as to become acquainted with the realities of jailhouse life, in *Wagenius* I mentioned that Justice McFadden's *Wagenius* opinion raised very serious constitutional doubts. He wrote that in his view "a sentence (imprisonment or fine) and a withheld judgment are totally incompatible, conceptually and legally, and their combined use is without statutory authority." 99 Idaho at 283, 581 P.2d at 329 (McFADDEN, J., concurring and dissenting in part).

Given no discussion in the Court's opinion in *Wagenius* are the all-important statutes which give the sheriff certain duties and certain rights relative to his operation of keeping the county jail. I.C. § 20–601 dictates the use of the county jail:

"1. For the detention of persons committed in order to secure their attendance as witnesses in criminal cases.

"2. For the detention of persons charged with crime and committed for trial.

"3. For the confinement of persons committed for contempt, or upon civil process, or by other authority of law.

"4. For the confinement of persons sentenced to imprisonment therein upon a conviction for crime."

I.C. § 20–604 states, *inter alia,* that "[a]ll persons, officers and officials in charge of a jail or confinement facility shall accept a person for detention or confinement upon receiving a certified copy of an *order* made pursuant to this section." (Emphasis added.)

I.C. § 20–608 without doubt is that section of the Code which has made sheriffs leery of "housing" persons who are "placed" in county jails—as against being confined there under an imposed sentence. It provides:

"When a county jail or a building contiguous to it is on fire, and there is reason to apprehend that the *prisoners* may be injured or endangered, the sheriff or jailer must remove them to a safe and convenient place, and there confine them as long as may be necessary to avoid the danger." (Emphasis added.)

Sheriffs have enough concern for *prisoners* whom they are required to keep without the worry of a disastrous fire which injures persons staying at the jail who are not confined by imposed sentence. This would not seem insurmountable, but it does suggest that sheriffs have some lawful say as to who they will "house" in connection with a probation agreement, which seems to be a point not considered in the *Wagenius* opinion. And then, too, there is the matter of expense for food and bedding. Rocque, of course, was, out of his earnings, paying his board and room. Another defendant, De-Voe (the companion case), in addition to a probation which included a fine (only part of which was suspended), was required to enjoy two days (one suspended) of jail life. In all likelihood, had he not appealed, the sheriff would have had the cost of feeding him for that one day.

All considered, although there is undoubtedly merit in letting first offenders, particularly impressionable young people, "get a taste of the lash" (as one north Idaho district judge is reported to have so worded the practice) by experiencing a few hours or days in jail, *Rocque's case* establishes that the misunderstanding created by the loose language in *Wagenius* has unleashed a mischief which must be brought to heel. In being thus brought to now agree with the views of Justice McFadden, I am also not unmindful of the uncompensated injustice done to Rocque, the threat of future civil suits based upon "Rocque-type" escape convictions, and the sum of between $10,000 to $20,000 paid out by the State to confine a man who did not escape and committed no crime.