Michael PHIPPS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 95–CA–002448–MR.

Court of Appeals of Kentucky.

July 26, 1996.

Discretionary Review Denied by Supreme Court Dec. 11, 1996.

J. David Niehaus, Daniel T. Goyette, Jefferson District Public Defender, Louisville, for appellant.

A.B. Chandler, III, Attorney General, Vickie L. Wise, Assistant Attorney General, Frankfort, for appellee.

Before WILHOIT, C.J., and COMBS and HUDDLESTON, JJ.

## OPINION

HUDDLESTON, Judge.

Michael Phipps appeals from a Ky.R.Crim. Proc. (RCr) 8.09 conditional plea of guilty[1] entered in Jefferson Circuit Court to the charge of second-degree escape.

In May 1994, Phipps was committed to the Jefferson County Department of Corrections pursuant to a Jefferson District Court judgment ordering him to serve ninety days for a misdemeanor conviction. The Department of Corrections placed Phipps in River City Correctional Center ("RCCC"). Upon arrival at RCCC, Phipps signed a document saying that he had "read ... and agree[d] to abide by" RCCC's policies and regulations. The document informed Phipps that, pursuant to Ky.Rev.Stat. (KRS) 520.010, the "failure of a temporary leave granted for a specific purpose [or] for a limited period" would constitute "[e]scape."[2] It further explained that such conduct would result in being charged with "[e]scape in the [s]econd [d]egree" under KRS 520.030. After only three days at RCCC, Phipps failed to return from an approved leave. He was subsequently indicted for second-degree escape.[3]

■ RCCC is privately owned and operated by United States Corrections Corporation ("USCC"). In 1989, "pursuant to KRS 67B.010 et seq.,"[4] Jefferson County and USCC entered an "Inmate Housing Agreement" whereby USCC agreed to "house ... pretrial and post trial misdemeanant offenders ... in the custody of the Jefferson County Corrections Department" at RCCC. Phipps contends that Jefferson County was not authorized to contract with USCC for the housing of inmates at RCCC and, consequently, that "the government relinquished its right to insist on completion of his sentence by sending him to [RCCC]." We disagree.

Explaining the county's "responsibility for incarceration of prisoners," KRS 441.025 provides:

(1) The fiscal court of each county shall provide for the incarceration of prisoners arrested in the county or sentenced or held by order of the courts in the county.

(2) The fiscal court shall provide for the incarceration of prisoners by:

1. Ky.R.Crim.Proc. (RCr) 8.09 allows a defendant to enter a conditional plea of guilty while reserving the right to appeal specified issues. If the appeal is successful, the defendant will be allowed to withdraw the guilty plea.

2. Ky.Rev.Stat. (KRS) 520.010(5) defines "escape" as "departure from custody or the detention facility in which a person is held or detained with knowledge that the departure is unpermitted, or failure to return to custody or detention following a temporary leave granted for a specific purpose or for a limited period.... "

3. As the Commonwealth correctly points out, the issue of whether one can properly be charged with felony escape from a detention facility while serving a misdemeanor sentence is not before this Court.

4. KRS 67B.010 states: "The General Assembly of the Commonwealth of Kentucky determines as a legislative finding of fact that the needs of large urban areas in the field of detention, institution-alization, and rehabilitation of offenders and public wards are more specialized, acute, and distinct than the needs of smaller communities, and require programs peculiarly suited to the needs of large, urban areas, and that in order to protect, enhance, and maintain the public safety, health, and general welfare, *it is necessary that fiscal courts of counties containing a city of the first class* where the constitutional offices of sheriff and jailer have been consolidated, *be empowered to create metropolitan correctional services departments which shall be divisions of county government, and which will be vested with the duty, responsibility, and power to maintain and operate all of the correctional, detention, and rehabilitative facilities of such counties in a professional and competent manner."* (Emphasis supplied.) *See also* KRS 83.410 (saying that "conditions found in cities of the first class are ... different from those found in other cities").

*KRS 81.010(1) classifies "Louisville, Jefferson County"* as a city of the first class.

(a) *Providing and maintaining a jail in the county;* or

(b) Contracting with another county or a city for the incarceration and care of its prisoners; and

(c) Providing for the transportation of prisoners, as provided for in KRS 441.505 and 441.510 including the provision of vehicles, drivers and guards.

(3) Nothing in this section shall prohibit a county from providing facilities for holding prisoners for limited periods of time and contracting with another county or a city for longer periods of incarceration.

(4) Any county may enter into an agreement pursuant to KRS 65.210 to 65.300 to provide or to use jail facilities. (Emphasis supplied.)

*See also* KRS 67.080 (explaining that "[t]he fiscal court shall ... [p]rovide for the incarceration of prisoners according to the provisions of KRS Chapter 441"). KRS 441.025(2)(a) does not restrict the county in the methods it may choose to provide and maintain a jail, nor has Phipps pointed to any other limiting statute.[5] Jefferson County has complied with KRS 441.025(2)(a) by "providing and maintaining a jail in the county."[6]

Another relevant statute, KRS 67.083(3)(e), provides that:

The fiscal court shall have the power to carry out governmental functions necessary for the operation of the county. [T]he fiscal court of *any* county may enact ordinances, issue regulations, levy taxes, issue bonds, appropriate funds and employ personnel in performance of the following public functions:

(e) *Provision of corrections facilities and services,* and programs for the confinement, care and rehabilitation of juvenile law offenders[.] (Emphasis supplied.)

Discussing KRS 67.083 in general, the Supreme Court of Kentucky has explained:

The purpose of KRS 67.083 is to provide counties with the necessary latitude and flexibility to finance various governmental services specified in subsection 3 while retaining the authority of the General Assembly to limit by statute local governmental activities. The legislature has enacted no such limiting statute. *Any limitation cannot be implied and must be an express restriction.* (Emphasis supplied.)

*Casey County Fiscal Court v. Burke,* Ky., 743 S.W.2d 26, 27 (1988).

The circuit court correctly cited KRS 67.083 but it incorrectly referred to it as the home rule statute.[7] The confusion over the identity of the home rule statute seems to be based upon the fact that the version of KRS 67.083 enacted in 1972 attempted to grant home rule to *all counties. Casey County Fiscal Court,* 743 S.W.2d at 27. Subsequently, however, the Supreme Court of Kentucky "struck down the delegation of home rule to counties with the singular exception that the law delegated to counties the power to impose and collect, license, franchise and occupational taxes." *Id.* at 27 (discussing *Fiscal Court of Jefferson County v. Louisville,* Ky., 559 S.W.2d 478 (1977)). KRS 67.083 has been amended accordingly.

Technically, under current law only "cities of the first class" are entitled to home rule.[8]

---

**5.** Since KRS Chapter 197 only applies to "penitentiaries," Phipps' argument that KRS 197.500(2), regarding the "[p]rivatization of prisons," excludes county jails from the definition of "adult correctional facilit[ies]" for purposes of KRS 197.505 to 197.525 is irrelevant. The only institutions affected by KRS 197.505 to 197.525 are the state penal institutions listed in KRS 197.010(4). Recognizing this distinction, the circuit court correctly rejected the argument.

**6.** Since KRS 441.025(2)(a) specifically refers to "providing and maintaining a jail *in the county,"* KRS 441.025(2)(b) clarifies that it is possible for the county to comply with the statutory duty to "provide for the incarceration of prisoners arrested in the county or sentenced or held by order of the courts *in the county* " by contracting to incarcerate prisoners *outside of the county.* (Emphasis supplied.)

**7.** The actual Home Rule Act, KRS 83.410 *et seq.,* grants "citizens living within a *city* of the first class the authority to govern themselves to the full extent required by local government ...." (Emphasis supplied.)

**8.** KRS 83.520 explains that "[t]he legislative body of a *city* of the first class shall have the power to exercise all of the rights, privileges, powers, franchises, including the power to levy all taxes, not in conflict with the Constitution and

It is significant, however, that KRS 67B.010 grants the "fiscal courts of *counties containing a city of the first class* ... [the power] to create metropolitan correctional services departments which shall be divisions of *county* government ... vested with the duty, responsibility, and power to maintain and operate all of the correctional, detention, and rehabilitative facilities of such counties...." (Emphasis supplied.) Responding to the issue at hand, the General Assembly recently enacted several amendments to KRS Chapter 67B. House Bill 372 (Feb. 8, 1996) amended the KRS 67B.020 definition of "correctional facilit[ies]" to expressly include "facilities operated by private agencies under contract with the fiscal court." The Bill also amended KRS 67B.050, which sets forth the "[p]owers and duties of [the Metropolitan Correctional Services Department]," to expressly convey "the power to enter into contracts with private agencies for the operation of correctional or detention facilities...." Since the 1996 amendments were not in effect at the time of the charges in question, House Bill 372 is not applicable to the case before us. We understand, however, that the General Assembly amended KRS Chapter 67B to expressly grant powers that were previously implied therein. Since KRS 67B effectively allows for a merger of city and county functions "in the field of detention, institutionalization, and rehabilitation of offenders and public wards" in counties containing a city of the first class, home rule authority extends to the Metropolitan Correctional Services Department even though it is technically a division of "county government" instead of "city government."

Since the legislature has not enacted a limiting statute and no such limitation may be implied, we believe that KRS 67.083 provides Jefferson County with "the necessary latitude and flexibility" to provide and maintain a jail in the county as required by KRS 441.025. *Casey County Fiscal Court,* 743 S.W.2d at 27. Read together, KRS 441.025(2)(a), KRS 67.083(3)(e) and KRS

Chapter 67B allow Jefferson County to contract with a private corporation, such as USCC, to provide and maintain a jail. As a result, the transfer of Phipps to RCCC did not constitute an unauthorized release.

Phipps' contention that RCCC is not a "detention facility" from which he could be guilty of second-degree escape also lacks merit. KRS 520.010(4) defines "[d]etention facility" as:

> [A]ny *building* and its premises *used for the confinement of a person:*
> (a) Charged with or *convicted of an offense;*
> (b) Alleged or found to be delinquent;
> (c) Held for extradition or as a material witness; or
> (d) Otherwise confined pursuant to an order of court for law enforcement purposes.
> (Emphasis supplied.)

RCCC falls precisely within the KRS 520.010(4)(a) definition of a "[d]etention facility." In addition to defining "[e]scape" for him, RCCC made Phipps aware that KRS 520.030 provides that "[a] person is guilty of escape in the second degree *when he escapes from a detention facility* or, being charged with or convicted of a felony, he escapes from custody." (Emphasis supplied.) Phipps, having been made aware of the consequences of "escape," signed his name [9] indicating that he had "read ... and agree[d] to abide by" the rules and regulations. He was well aware of the consequences of not returning to RCCC. As he failed to return to RCCC, a valid detention facility, following a temporary, approved leave, Phipps was properly convicted of second-degree escape.

The judgment is affirmed.

All concur.

---

so as to provide for the health, education, safety and welfare of the inhabitants of the city, to the same extent and with the same force and effect as if the General Assembly had granted and delegated to the legislative body of the city all of the authority and powers that are within its powers to grant to a municipal corporation as if expressly enumerated...." (Emphasis supplied.)

The fiscal court is the legislative body of the *county.* *See generally* KRS Chapter 67.

9. Phipps has not alleged that he signed this document without understanding it.