**Patrick W. DARCY, Appellant**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

No. 2012–SC–000427–MR.

Supreme Court of Kentucky.

Sept. 18, 2014.

Molly Mattingly, Assistant Public Advocate, Department of Public Advocacy, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, James Coleman Shackelford, Assistant Attorney General, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

We have a long-recognized preference in our criminal law for jointly trying defendants who are, or could have been, jointly indicted. Joint trials promote judicial economy and consistent verdicts; but they present unique difficulties, as well. This case presents an opportunity for us to confront one of those joint-trial difficulties and to provide trial courts with guidance in the future. We are asked here to reconcile one defendant's interest in a continuance of the joint trial with his codefendant's asserted statutory right to a speedy trial under Kentucky Revised Statutes (KRS) 500.110.

In doing so, we conclude that a continuance of the joint trial requested by a defendant, so long as it is reasonable, is included within the scope of the "elastic" clause of KRS 500.110, allowing extension of the statutory speedy-trial time period. In other words, we hold a trial court is not to deny a defendant's motion for a continuance *solely* on the basis of protecting his codefendant's statutory right to a speedy trial.

Because we find the trial court has made this error, we reverse and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY.

No one was home at her son's residence when Tina Ball saw a strange vehicle backed up to the back porch of the residence. She stopped and confronted two men who fled the scene in their vehicle by speeding across the yard. Tina pursued them and called the police.

The Breckinridge County Sheriff's Department responded and located the vehicle. When Deputy Jimmy Gilpin activated his lights to initiate a traffic stop, the driver—later identified as Patrick Darcy—did not stop the vehicle. Instead, he led Gilpin on a chase over wet roads in and out of residential areas.

After driving a mile or two, the vehicle stopped in a residential neighborhood where the passenger jumped out and ran. Darcy sped away with Gilpin in pursuit. Darcy soon stopped the vehicle and fled on foot. He was caught within minutes and positively identified as the vehicle's driver.

Darcy consented to a search of the vehicle. This search revealed a necklace and a paint can containing money, both identified as stolen from Ball's residence, along with guns and other items not identified as missing from Ball's residence.

Meanwhile, the passenger was apprehended and identified as Randy McCleery, Jr. Tina identified McCleery from her confrontation at the residence, but she could not identify Darcy because she never had a clear view of him at the residence. But Darcy admitted he was involved in the burglary of the Ball residence.

Darcy and McCleery were separately indicted, but their cases were consolidated for trial. After a joint trial, the circuit court jury found Darcy guilty of first-degree burglary, first-degree fleeing or evading the police, and theft by unlawful taking of property under $500.[1] In accordance with the jury's recommendation, the trial court sentenced Darcy to twenty years for the burglary conviction and five years for the fleeing or evading conviction. The sentences were ordered to be served consecutively for a total of twenty-five years' imprisonment. The misdemeanor unlawful-taking conviction also carried a twelve-month sentence, which was to run concurrently. This appeal follows as a matter of right.[2]

## II. ANALYSIS.

Darcy raises six issues on appeal. Because we find the first issue he presents merits reversal, we only reach the remaining assignments of error insofar as they are likely to recur on retrial.

### A. The Trial Court Abused its Discretion by Denying Darcy's Motion for a Continuance Without Contemplating KRS 500.110's Elastic Clause.

■ Darcy and McCleery were scheduled to be jointly tried May 7, 2012, approximately four months after they were indicted.[3] Darcy was represented by the Department of Public Advocacy at all pretrial proceedings, and his assigned counsel prepared to represent him at trial. But twelve days before the scheduled trial date, private counsel, Bryan Coomer, filed a motion seeking a continuance of the trial on Darcy's behalf. In his motion, Coomer explained that Darcy's brother contacted him offering to pay his fee to represent Darcy. Because the trial date was near, Coomer requested a continuance to enable him to substitute his services for those of the DPA and to allow him sufficient time for trial preparation. The motion was heard by the trial court at the pre-trial conference, which was five days before the scheduled trial date.

At the hearing, the trial court expressed a favorable inclination toward granting Darcy a continuance but did not spend much time on the record contemplating the motion's merits. Instead, the trial court was preoccupied with McCleery's statutory "speedy trial clock." The trial court explained that McCleery had demanded a speedy trial in December and must be tried within 180 days of his demand. The Commonwealth confirmed that "as far as the statute goes," 128 days had already elapsed since McCleery's demand. After failing to find a suitable alternate trial date that would satisfy Darcy's motion and fall within the 52 days remaining on McCleery's "speedy trial clock," the trial court announced it would not "continue the case because [Mr. Coomer] just got into the case.... Mr. McCleery's the one who's

---

1. McCleery was found guilty of the same offenses as Darcy, but his sentence was enhanced by his persistent felony offender status. He also appealed to this Court. *McCleery v. Commonwealth*, 410 S.W.3d 597 (Ky.2013).

2. Ky. Const. § 110(2)(b).

3. The underlying alleged criminal acts took place on November 28, 2011; and the indictments were returned on January 4, 2012.

throwing a kink in the works by asking for a speedy trial, so I'm trying to make sure he gets it." Having expressed its appreciation for McCleery's speedy-trial motion, the trial court later opined, "I have no problem continuing if they both agree. If Mr. McCleery wants to play hardball and maintain, which is his right under the Constitution, then we're going to have a trial on Monday." McCleery, of course, did not consent to the continuance and Darcy's motion was denied. Accordingly, the case proceeded to trial as scheduled with the DPA continuing to represent Darcy.

Darcy challenges this denial on appeal. He claims the trial court abused its discretion in denying him a continuance because it improperly subordinated his constitutional right to his counsel of choice in favor of McCleery's constitutional right to a speedy trial or, alternatively, that the trial court misapplied KRS 500.110 by failing to consider the statute's "elastic" clause that allows for the grant of reasonable continuances.

■ Although much of Darcy's well-written brief focuses on framing this issue as one of constitutional import, pitting his right to the counsel of his choosing against McCleery's constitutional speedy-trial right, nothing in the record supports this constitution-based framing of the issue.

Darcy's motion for a continuance was not grounded in his Sixth Amendment right to counsel of his choosing, and citation to the Sixth Amendment is tellingly absent from his motion. Contemplation of constitutional principles was similarly omitted from the trial court's discussion of McCleery's speedy-trial right. Although not clearly articulated, the trial court's analysis of McCleery's speedy-trial demand speaks to application of a *statutory* right requiring trial within 180 days. It is clear that McCleery's constitutional speedy-trial right is not statutorily based, nor does it mechanically require trial within 180 days.[4] The sole reference to a constitutional right appears to have been in error when the trial court remarked that it was McCleery's "constitutional" right to object to the continuance Darcy sought in favor of his right to trial within 180 days. We cannot rely on this apparently inadvertent statement in the face of the trial court's extensive discussion of McCleery's *statutory* right to trial within 180 days of his speedy-trial demand.

■ With the issue now in proper focus as one of state law and not federal constitutional jurisprudence, we turn to the appropriate standard of review. Kentucky Rules of Criminal Procedure (RCr)

4. The prevailing test for analyzing alleged violations of a defendant's constitutional speedy trial right is announced in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). This test is incongruous with the ostensibly mechanical 180–day trial window alluded to by the trial court. Under *Barker*, courts weigh the length of the delay, the reasons for the delay, the defendant's assertion of his right to a speedy trial, and prejudice to the defendant to determine if there was a speedy-trial violation. In a further departure from the trial court's reactive determination to try McCleery within 180 days, the full gamut of *Barker* factors is not reached if the delay is not deemed presumptively prejudicial at the outset. Kentucky courts have consistently held that delays of much longer than 180 days do not constitute presumptive prejudice, let alone a speedy-trial violation. *See, e.g., Gerlaugh v. Commonwealth*, 156 S.W.3d 747, 750 (Ky.2005) (nine-month delay not presumptively prejudicial); *Dunaway v. Commonwealth*, 60 S.W.3d 563, 569–70 (Ky.2001) (thirteen-and-one-half-month delay not presumptively prejudicial); *Brown v. Commonwealth*, 934 S.W.2d 242, 248–49 (Ky.1996) (eleven-month delay not presumptively prejudicial). Given the contrast between the trial court's immutable reliance on the 180–day "speedy trial clock" and the constitutional speedy-trial analysis, it is apparent that the trial court was not scrutinizing Darcy's motion under a constitutional analysis.

9.04 vests trial courts with discretion to grant a continuance postponing a hearing or trial.[5] So a trial court's decision granting or denying a continuance is reviewed for an abuse of discretion.[6] "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[7]

▪ Even though the reasonableness of a continuance depends upon the facts and circumstances of each individual case, we have announced factors for trial courts to consider in the exercise of their discretion. Factors the trial court is to consider in exercising its discretion are: length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice.[8]

Despite this elucidation of preference for using the *Snodgrass* factors to decide the propriety of a continuance, the trial court seemingly abandoned their application under the misapprehension that McCleery's statutory speedy-trial demand trumped all other considerations. Because the trial court's decision was focused on this statutory right, so, too, is our review.

Both parties agree that the uncited speedy-trial statute relied upon by the trial court was KRS 500.110. This must be so because it is the only Kentucky statute requiring a defendant to be tried within 180 days under any circumstances.[9] KRS 500.110 applies where a prisoner confined to a state institution for a term of imprisonment is also subject to an untried indictment.[10] In those circumstances, the prisoner-defendant may invoke his right to a speedy trial under KRS 500.110 and request final disposition of his untried indictment within 180 days from his demand.[11]

5. RCr. 9.04 ("The court, upon motion and sufficient cause shown by either party, may grant a postponement of the hearing or trial.").

6. *Shegog v. Commonwealth*, 142 S.W.3d 101, 109 (Ky.2004).

7. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky.2000) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

8. *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky.1991) (citing *Wilson v. Mintzes*, 761 F.2d 275, 281 (6th Cir.1985)).

9. *See* KRS 500.110.

10. *Id.*

11. *Id.* The parties have not contested the applicability of KRS 500.110 in this appeal even though our search of the record reveals no speedy-trial demand filed by McCleery asserting his entitlement to the benefit of KRS

500.110. The Commonwealth acknowledges that this integral portion of the record is missing and requests we take judicial notice of transportation orders directing that McCleery be transported from Roederer Correctional Complex to Breckinridge County for his court appearances. *See* KRE 201. McCleery's incarceration at Roederer corroborates the trial court's belief that McCleery was entitled to KRS 500.110's speedy-trial provision because he would have been housed at Roederer only if he were serving a term of imprisonment. Were he merely being detained in anticipation of trial, McCleery would have remained at a local jail. Importantly, Darcy does not object to the Commonwealth's request for judicial notice, nor does he question the applicability of KRS 500.110, McCleery's invocation of the statute, or the trial court's calculation of McCleery's "speedy trial clock." Because both parties appear in agreement regarding the pertinence of KRS 500.110 to the trial proceedings, we hereby take judicial notice of McCleery's transportation orders and conclude that McCleery met all of the conditions precedent to application of KRS 500.110.

The application of KRS 500.110 was at the heart of the trial court's denial of Darcy's motion to continue, and both parties provide competing interpretations of that statute on appeal. The Commonwealth argues the trial court was required to deny Darcy's motion to continue when it concluded there were no feasible alternate trial dates within the 180–day window created by KRS 500.110 because the statute "obligated" the trial court to dispose of McCleery's indictment within that period. To the contrary, Darcy argues the trial court's application of KRS 500.110 resulted in an abuse of discretion because the trial court denied his requested continuance without contemplating the statute's provision authorizing trial courts to grant continuances extending disposition of the relevant indictment beyond the otherwise required 180 days.

█ With these competing interpretations in mind, we examine the text of the statute. KRS 500.110 reads, in relevant, part, as follows:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of this state, and whenever during the continuance of the term of imprisonment there is pending in any jurisdiction of this state any untried indictment, . . . he shall be brought to trial within one hundred and eighty (180) days after he shall have caused . . . written notice of . . . his request for a final disposition to be made of the indictment . . . ; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

It is axiomatic that KRS 500.110 provides trial courts the ability to grant continuances extending the disposition of the untried indictment beyond 180 days after the statutory right is invoked. We have previously held this to be the case,[12] and even a cursory reading of the statute reflects the same.

The subordinate clause in KRS 500.110, the portion of the statute following the semicolon, begins with the phrase "provided that." This phrase is a proviso that often precedes a subordinate clause intended to create an exception, limitation, or condition altering the preceding independent clause.[13] That is exactly what the subordinate "elastic" clause in KRS 500.110 seeks to do. It is a clear attempt by the legislature to prevent trial courts from being hamstrung by application of the 180–day window requirement imposed by the statute's strict independent clause. Considering the unusual clarity with which the legislature created this elastic clause, we presume the trial court's confusion regarding the elastic clause's applicability to Darcy's motion to continue was borne from his status as a codefendant to the prisoner-codefendant, McCleery, who had invoked the application of KRS 500.110.

This case raises the issue of whether a codefendant's motion to continue falls within the scope of KRS 500.110's elastic clause, thus, allowing the prisoner-codefendant's trial date to be extended beyond the 180–day window. We find the answer to that question to be nearly as clear as the elastic clause's existence.

█ "[T]he cardinal rule of statutory construction is that the intention of the legislature should be ascertained and given effect."[14] "To determine legislative intent,

---

**12.** *Wells v. Commonwealth*, 892 S.W.2d 299, 303 (Ky.1995).

**13.** Bryan A. Garner, Garner's Dictionary of Legal Usage 727 (3d ed.2011)

**14.** *MPM Fin. Group, Inc. v. Morton*, 289

we look first to the language of the statute, giving the words their plain and ordinary meaning."[15] Only when the plain meaning of the statute's language is ambiguous do we depart from a strict reliance on the words of the legislature.[16]

We see no ambiguity in the elastic clause contained in KRS 500.110. The statute clearly states that "the court ... may grant *any* necessary or reasonable continuance"[17] so long as good cause is shown. The legislature's use of the word *any*, which is defined as "one or some indiscriminately of whatever kind—used to indicate one selected without restriction,"[18] is a clear indication of its intent for the elastic clause in KRS 500.110 to be broadly applicable. It is also worth noting that this broad scope is tempered only by the "necessary or reasonable" requirement. Finding no ambiguity when giving the language of the elastic clause its plain and ordinary meaning, we are constrained to conclude that a non-prisoner defendant's motion for a continuance is covered within the scope of KRS 500.110's elastic clause.

This plain-language interpretation of the elastic clause in KRS 500.110 does not lead to an unreasonable result.[19] As alluded to above, it is not at all uncommon for multi-ple defendants to be jointly tried. In passing KRS 500.110, the legislature must have been aware of this reality of criminal prosecution. We presume the legislature understands the law and our interpretations of it when passing legislation;[20] and the existence of a mechanism and preference for consolidating criminal trials that predates the adoption of KRS 500.110 does not elude this presumption.[21] It is, therefore, not absurd to believe the legislature intended the elastic clause of KRS 500.110 to allow a non-prisoner-defendant, who is not eligible for the benefit of KRS 500.110's speedy trial provision, to obtain a reasonable continuance that would result in his prisoner-codefendant being tried more than 180 days after invoking his speedy-trial right under KRS 500.110.

Our interpretation here aligns with relevant constitutional speedy-trial jurisprudence. When analyzing a defendant's appeal alleging his Sixth Amendment speedy-trial right was violated, we concluded that a continuance granted upon the request of the appellant's codefendant "weighs against neither the Commonwealth nor Appellant" under the *Barker* inquiry.[22] Our decision not to weigh the delay caused by the codefendant's continu-

S.W.3d 193, 197 (Ky.2009); *see also* KRS 446.080(1).

15. *Richardson v. Louisville/Jefferson Cnty. Metro Gov't,* 260 S.W.3d 777, 779 (Ky.2008).

16. *Shawnee Telecom Res., Inc. v. Brown,* 354 S.W.3d 542, 551 (Ky.2011).

17. KRS 500.110 (emphasis added).

18. Merriam-Webster Dictionary 53 (10th ed.2002).

19. *Shawnee Telecom Res.,* 354 S.W.3d at 551 ("We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one.").

20. *St. Clair v. Commonwealth,* 140 S.W.3d 510, 570 (Ky.2004).

21. *See, e.g.,* RCr. 6.20; *Smith v. Commonwealth,* 473 S.W.2d 829 (Ky.1971); *Romans v. Commonwealth,* 547 S.W.2d 128 (Ky.1977).

22. *Bratcher v. Commonwealth,* 151 S.W.3d 332, 344 (Ky.2004). As discussed above, the *Barker* inquiry is the test used to analyze Sixth Amendment speedy trial violations. *Barker,* 407 U.S. 514, 92 S.Ct. 2182. If the gateway showing of presumptive prejudice can be made, the inquiry then requires an analysis of the delay-causing events leading to an undue delay of trial. As part of this analysis, courts often allocate "blame" for the different delays as a way of framing its view of the degree of prejudice suffered by the defendant.

ance against the Commonwealth or the Appellant, effectively, yielded the same result as the application of KRS 500.110's elastic clause as we presently interpret it. It allowed for the grant of a reasonable continuance in favor of the codefendant while extending or pausing the appellant's "speedy trial clock." We find no reason to treat a codefendant's motion to continue differently in the context of a statutorily created right than a constitutional right. As a result, and based on the foregoing, we hold that a continuance requested by a codefendant falls within the scope of KRS 500.110's elastic clause so long as the trial court concludes the movant has shown "good cause" and determines the continuance to be "necessary or reasonable."[23]

Here, the trial court's denial of Darcy's requested continuance was not based on a determination that Darcy had not shown "good cause" or that the continuance was not "necessary or reasonable" sufficient to trigger KRS 500.110's elastic clause. Nor was it grounded in the trial court's exercise of discretion after any on-the-record analysis of the *Snodgrass* factors. The trial court's action was, instead, based on a seeming misinterpretation of KRS 500.110, which—in the trial court's mind—precluded any continuance that would cause McCleery, the prisoner-codefendant, to be tried more than 180 days after invoking his speedy-trial right under KRS 500.110. Because we have found this interpretation and application of KRS 500.110 to be incorrect, we are obliged to conclude that the

trial court's denial of Darcy's motion for a continuance was not supported by sound legal principles and, therefore, was an abuse of discretion.[24]

 The Commonwealth claims reversal of Darcy's convictions is not necessary even in light of the trial court's abuse of discretion because Darcy was, nonetheless, represented by competent counsel at trial. Without doubting the competency and abilities of Darcy's trial attorney, we do note that the trial court's denial of his continuance directly caused Darcy to be unable to be represented by his counsel of choice at trial.[25] The prejudice a defendant suffers by being represented by one attorney as opposed to another, although both of the utmost competency and professionalism, is difficult—if not impossible—to quantify. We agree with the Supreme Court in noting that prejudice must be presumed when a defendant is denied counsel of his choice because an alternate attorney may make any number of different strategic decisions having an unquantifiable impact on the proceedings even though the defendant was provided with competent, or perhaps even exceptional, representation in the first instance.[26] In light of this prejudice, we must reverse Darcy's convictions and remand to the trial court for further proceedings.

 To be sure, we are not holding, nor implying, that the trial court must have granted Darcy's motion to continue

---

23. KRS 500.110.

24. To this point, we also find it reversible error for the trial court to deny Darcy's motion without contemplating any of the *Snodgrass* factors on the record. If the trial court's denial was not premised on an erroneous application of KRS 500.110, we would be hard pressed to find any reasoning in the record to support the trial court's denial of Darcy's motion because the record is devoid

of any reasoning or analysis beyond discussion of McCleery's speedy-trial right.

25. We again stress that the present case is not one in which we are expressing an opinion regarding Darcy's Sixth Amendment right to counsel of his choice.

26. *United States v. Gonzalez–Lopez*, 548 U.S. 140, 150, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006).

as a matter of law. Instead, we conclude that the trial court's error was in the reasoning underlying the denial. This opinion is not meant to be a mandate requiring trial courts to grant a defendant's motion to continue to the detriment of a prisoner-codefendant's statutory speedy-trial right. To the contrary, our decision today stands for the proposition that a defendant's motion to continue *may* be granted even when doing so would result in a prisoner-codefendant being tried more than 180 days from invoking KRS 500.110. In order to balance the movant's interest in obtaining a continuance with the prisoner-codefendant's interest in disposing of a pending indictment within 180 days of the speedy-trial request, trial courts must simply add another layer of analysis to their assessment of the *Snodgrass* factors. More specifically, we find the only difference between a trial court's normal analysis of a motion to continue and its analysis of a motion to continue that is subject to a prisoner-codefendant's KRS 500.110 speedy-trial motion is that the trial court must cast a keener eye upon the potential prejudice that the prisoner-codefendant might suffer because of the continuance.

Based on the foregoing, we conclude that the trial court abused its discretion in denying Darcy's motion for a continuance. So we reverse his convictions and remand to the trial court for further proceedings.

**B. Darcy was not Entitled to a Jury Instruction for Facilitation to Commit Burglary.**

■■■■ Darcy claims entitlement to a jury instruction for facilitation to commit burglary. As a basis for this entitlement, he argues the jury may have reasonably concluded he was not guilty of complicity to commit burglary but guilty of facilitation to commit burglary.

■■■■ It is the trial court's duty to instruct the jury "on the whole law of the case[.]"[27] This duty includes presenting the jury with instructions encompassing lesser-included offenses that are supported by evidence of record.[28]

We have noted the distinction between the complicity statute, KRS 502.020(1), and the facilitation statute, KRS 506.080(1), as follows:

> Under either statute, the defendant acts with knowledge that the principal actor is committing or intends to commit a crime. Under the complicity statute, the defendant must intend that the crime be committed; under the facilitation statute, the defendant acts without such intent. Facilitation only requires provision of the means or opportunity to commit a crime, while complicity requires solicitation, conspiracy, or some form of assistance. Facilitation reflects the mental state of one who is 'wholly indifferent' to the actual completion of the crime.[29]

Therefore, to prove his entitlement to a facilitation instruction, Darcy must show there is sufficient evidence of record to allow the jury to conclude he knew of McCleery's intent to burglarize Ball's residence but was "wholly indifferent" to whether the crime was completed. Darcy has not met this burden.

Darcy's argument that he is entitled to a facilitation instruction is not based on evi-

---

**27.** *Houston v. Commonwealth,* 975 S.W.2d 925, 929 (Ky.1998).

**28.** *Id.; Swain v. Commonwealth,* 887 S.W.2d 346, 348 (Ky.1994).

**29.** *Thompkins v. Commonwealth,* 54 S.W.3d 147, 150–51 (Ky.2001) (citations and internal quotation marks omitted).

dence in the record that he only facilitated burglary as opposed to being complicit to burglary but, instead, on the possibility that the Commonwealth failed to prove its case. He claims that the jury may not be convinced beyond a reasonable doubt that he intended the burglary be completed but may believe he facilitated the burglary's completion. On this basis, Darcy argues, he is entitled to a facilitation instruction.

The evidence presented at trial shows Darcy backed his vehicle up to Ball's vacant residence to allow McCleery to burglarize the residence and load the loot into the vehicle. When confronted, McCleery jumped into Darcy's vehicle; and the two fled across the lawn to escape. Darcy continued his attempt to escape detection by leading the police on a chase. And after he was apprehended and identified by a witness, Darcy admitted he was involved in the burglary.

Nowhere in the record is there any evidential foundation to support a facilitation instruction. In fact, Darcy did not pursue a facilitation theory at trial until requesting the facilitation instruction. To require a facilitation instruction based on speculation that the Commonwealth may fail to prove the elements of its case, absent any affirmative evidence of facilitation, would be to require a facilitation instruction in every indictment charging accomplice liability. We have previously declined to extend our jurisprudence this far and again decline to do so.[30]

Darcy is not entitled to an instruction on facilitation on retrial.

## C. Admissibility of 404(b) Evidence.

■ Darcy argues that the trial court erred in allowing the Commonwealth to introduce evidence of the contents of his vehicle at the time of his arrest. He claims this violated KRE 404(b) because the vehicle contained the fruits of a burglary that he and his codefendant, McCleery, were charged with committing the same day as the burglary charged in this case. Because we do not believe the evidence presented by the Commonwealth implicates KRE 404(b), we disagree with Darcy's claim.

Before trial, the Commonwealth notified Darcy of its intention to introduce 404(b) evidence that he and McCleery were charged with a burglary occurring in neighboring Meade County on the same day as the burglary of Ball's residence. Darcy objected to the admission of this other-crimes evidence. The trial court rejected the Commonwealth's argument that the evidence was admissible to show a common scheme or plan and to identify the perpetrators and found the Meade County burglary too distinct from the burglary of Ball's residence to admit evidence from the Meade County burglary. But the trial court did permit the Commonwealth to introduce evidence of what was found in Darcy's vehicle at the time of his arrest.

Even though trial testimony had shown that the only items missing from Ball's residence were a can of loose change and a necklace, Deputy Gilpin testified that he found "a couple of weapons, a big screen TV, clothing, person's jewelry, odd and ends, and stuff in Darcy's vehicle at the time of his arrest."[31] The Commonwealth

---

**30.** *White v. Commonwealth,* 178 S.W.3d 470, 490 (Ky.2005) ("Such an approach would require that a facilitation instruction be given in every case where the defendant is charged with complicity. But such an approach is improper and a lesser-included offense instruction is available only when supported by the evidence.").

**31.** Admirably, knowing that much of the contents of Darcy's vehicle were fruits of the Meade County burglary, the Commonwealth

also entered four pictures of· the contents of the vehicle into evidence. Darcy took particular exception to Exhibit 14 depicting "some jewelry and some stuff in a bag" on the vehicle's passenger seat.

Deputy Henley of the Meade County Sheriff's Office also presented testimony at trial. He testified he was at the scene of Darcy's arrest because there had been some burglaries in Meade County, and he wanted to determine if Darcy possessed any of the stolen goods. Deputy Henley said no more about the Meade County burglaries, nor about whether Darcy was in possession of the contraband he sought. Darcy alleges all of the above-described evidence was erroneously admitted in violation of KRE 404(b).

■■■ KRE 404(b) is an exclusionary rule that precludes admission of evidence of other crimes, wrongs, or other bad acts when introduced to "prove the character of a person in order to show action in conformity therewith." [32] This rule is intended to prevent admission of propensity evidence that may improperly cloud the jury's judgment.[33]

This type of evidence is generally evidence that on other occasions a person has acted in a particular way, and it is offered as proof that the person, being the sort of person who does that sort of thing or acts that way, is likely to have done the same sort of thing or acted that same way on the occasion at issue in this case.[34]

The evidence Darcy now complains of does not fit within the scope of KRE 404(b) or the type of propensity evidence it seeks to exclude. None of the evidence challenged by Darcy is an indication of any wrongdoing.[35] Even though the testimony regarding the items in Darcy's vehicle was—in the very literal sense—evidence of a prior bad act, the jury was not informed of this; and, therefore, any reference to them was not propensity evidence. Lastly, Henley's statement regarding the existence of burglaries in Meade County was vague and did not implicate Darcy or McCleery in the commission of those crimes or other bad acts.[36]

---

sought permission from the trial court to ask a leading question regarding the guns in the vehicle. The possession of a firearm was a necessary element of the first-degree burglary charge, and the Commonwealth wanted to enter its proof regarding that element without providing Gilpin the opportunity to discuss the Meade County burglary or its fruits. Darcy objected to the Commonwealth's use of a leading question. He instead proposed the Commonwealth simply ask Gilpin "what did you find in the vehicle." The Commonwealth asked this recommended question, which elicited the quoted response from Gilpin. We would ordinarily consider this to be invited error, which is not subject to judicial review, see Quisenberry v. Commonwealth, 336 S.W.3d 19, 37–38 (Ky.2011); but since we are presently focused on this issue as likely to recur on retrial, we take a broader view and address the general admissibility of evidence regarding the items found in Darcy's vehicle.

**32.** KRE 404(b).

**33.** See Robert G. Lawson, The Kentucky Evidence Law Handbook § 2.25(3)(a) (4th ed.2003)

**34.** Trover v. Estate of Burton, 423 S.W.3d 165, 172 (Ky.2014).

**35.** Peyton v. Commonwealth, 253 S.W.3d 504, 517 (Ky.2008) (holding that testimony that the defendant was identified by police at the courthouse was not inadmissible 404(b) evidence because an individual's presence at the courthouse is not an indication of a bad act).

**36.** Id. ("Deputy Bean's statement that he had dealt with Appellant on many different occasions does not fall under KRE 404(b). His statement was vague and did not allude to any particular bad act Appellant committed."). But see Wiley v. Commonwealth, 348 S.W.3d 570, 581 (Ky.2010) ("Banta stated that 'being familiar with [Appellant,] I went back to our division to kind of check for his status, maybe being wanted or anything like that.' We find the quoted part of Banta's

So we find the evidence of the contents of Darcy's vehicle was not subject to KRE 404(b) and was properly introduced as evidence. The trial court should again allow its admission in the event of a retrial so long as the references to the contraband from the Meade County burglary do not deteriorate to nothing more than thinly veiled references to Darcy's involvement in that crime.[37]

### D. Darcy was not Entitled to a Directed Verdict on the Charge of Fleeing or Evading Police in the First Degree.

Darcy argues he was entitled to a directed verdict on the first-degree fleeing and evading charge because the Commonwealth was unable to provide sufficient evidence that his flight "caused or created a substantial risk of serious risk of injury or death." Since Darcy presents the same argument as his codefendant, McCleery, did on appeal, we do not feel compelled to provide the trial court with guidance regarding this issue in anticipation of retrial. Instead, we simply direct the trial court's attention to our previously published opinion in *McCleery*, 410 S.W.3d 597.

For the reasons enunciated in *McCleery*, Darcy is not entitled to a directed verdict on the charge of fleeing or evading police.

### III. CONCLUSION.

For the foregoing reasons, we find that the trial court abused its discretion when it denied Darcy's motion for a continuance. Accordingly, we reverse Darcy's convictions and remand the case to the trial court for a new trial consistent with this opinion.

All sitting. All concur.

---

37. *See Wiley*, 348 S.W.3d at 581 (finding that a thinly veiled reference to a defendant's criminal history provided the jury with an "inescapable" inference regarding the defendant's prior wrongdoings).

testimony was a thinly veiled reference to Appellant's criminal history and was not offered for another purpose. While the Commonwealth is technically correct in contending that Banta did not specifically testify about Appellant's prior wrongs, the inference drawn by Banta's testimony is inescapable.").