RENDERED: NOVEMBER 17, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1321-MR

ARCHIE LEE WILLIAMS         APPELLANT

APPEAL FROM DAVIESS CIRCUIT COURT
v.    HONORABLE LISA P. JONES, JUDGE
ACTION NO. 21-CR-00160

COMMONWEALTH OF KENTUCKY       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, DIXON, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Archie Lee Williams brings this appeal from an October 12, 2021, Order of Judgment and Sentence of the Daviess Circuit Court, upon a jury trial, finding Williams guilty of robbery in the first degree and sentencing him to twelve-years' imprisonment. We affirm.

On July 16, 2018, an armed robbery occurred at Cash Express in Owensboro, Kentucky. A man with a gun, later identified as Archie Lee Williams, entered Cash Express and approached a customer, Linda Rodriguez. Williams put

the gun to Rodriguez's head and forced her behind the counter where Hayli Casebier, a Cash Express employee, was located. Williams then pushed Rodriguez to the ground and demanded that she open the safe. When Rodriguez was unable to open the safe, Williams pushed her out of the way causing a tear to her rotator cuff. Williams instructed Casebier to gather cash from the cashier drawer and to open the safe; Casebier complied. Williams tied Rodriguez's hands behind her back. Thereafter, Williams attempted to tie Casebier's hands behind her back but was unable to do so because of her advanced pregnancy. After Williams left the scene, police arrived and interviewed Rodriguez and Casebier.

The day after the robbery, police received a phone call from St. Benedict's Homeless Shelter. The caller reported that a man at the shelter, Joseph Carter, had information about the robbery at Cash Express. Detective Joseph Jones of the Owensboro Police Department interviewed Carter at the police station. Carter reported that the day before the Cash Express robbery, he met a man who referred to himself as "Apache." Apache was later identified as Williams. In exchange for some marijuana, Carter assisted Williams in getting him a room at the Cadillac Motel in Owensboro. Carter further told police that Williams had shown him a black .45 semi-automatic pistol.

According to Carter, the day after he secured the motel room for Williams, Carter encountered Williams again. Williams asked Carter if he was

interested in assisting Williams in robbing Cash Express. Williams offered Carter $100 to go into Cash Express to see if there was a security guard on duty. Carter declined to participate in the robbery. Carter provided police with the telephone number he had for Williams, and police were able to use the number to locate a photograph of Williams. Carter then identified the photograph of Williams as depicting the same man who had approached him about robbing Cash Express.

On June 11, 2020, a Daviess County Grand Jury indicted Williams upon robbery in the first degree (20-CR-00390). Williams was arraigned on June 23, 2020. In a letter dated June 24, 2020, and filed of record July 1, 2020, the Federal Bureau of Prisons informed the Commonwealth Attorney of Daviess County, Kentucky, that Williams was in federal custody. The Federal Bureau of Prisons also informed the Commonwealth Attorney that Williams had requested disposition of any pending charges against him in Daviess County pursuant to the Interstate Agreement on Detainers (IAD). Williams was transported to the Daviess County Detention Center and was subsequently arraigned on September 3, 2020.

At a pretrial conference in Daviess Circuit Court on September 29, 2020, Williams made a motion for a speedy trial. By Order entered October 16, 2020, the Daviess Circuit Court entered the following order:

> This matter was before the Court for a pre-trial conference. [Williams'] Motion for a Speedy Trial was reviewed by the Court. After reviewing, the Court finds that for good cause shown the matter is continued to

February 3, 2021[,] at 9:30 AM.  For a trial by jury.  The Court's determination is due to Covid-19 restrictions.  The Court finds there are jurors that have expressed concerns related to the inability to social distance.  As a result, Jurors have requested to be excused from jury duty.  The Court finds the Circuit Clerk's Office is currently ordered to be staffed at 50% which would make it impossible to prepare and conduct a trial before the expiration of 180 days.

Therefore, the Court finds it is necessary and reasonable to continue [Williams'] trial.  So Ordered this 14th day of October[,] 2020.

October 16, 2020, Order (Action No. 20-CR-00390).  A jury trial was scheduled for February 3, 2021.  The February 3, 2021, trial date was cancelled due to Covid-19 restrictions, and a new trial date was set for April 13, 2021.  The April 13, 2021, trial date was also cancelled due to Covid-19 restrictions, and a new trial date was set for June 1, 2021.

On April 14, 2021, a Daviess County Grand Jury returned a superseding indictment charging Williams with robbery in the first degree, kidnapping in the first degree, and attempted kidnapping (21-CR-00160).  These charges emanated from the same incident at Cash Express on July 16, 2018, which resulted in Action No. 20-CR-00390.  Accordingly, Action No. 20-CR-00390 was dismissed by Order entered June 2, 2021.

-4-

On August 18, 2021, Williams sent a letter to the Daviess Circuit Court again asserting his right to a speedy trial. Williams attached a copy of the IAD Notice of Untried Indictment that pertained to Action No. 20-CR-00390.

A jury trial for the robbery charge was conducted on August 23-26 in Action No. 21-CR-00160.[1] At the conclusion of the trial, Williams was found guilty on the first-degree robbery charge. By Judgment and Sentence entered October 12, 2021, Williams was sentenced to twelve-years' imprisonment. The sentence was ordered to run consecutively to the federal prison sentence Williams was serving. This appeal follows.

Williams contends the trial court erred by violating his statutory right to a speedy trial as set forth in Article III of the IAD,[2] which is codified at Kentucky Revised Statutes (KRS) 440.450. More specifically, Williams asserts the trial court's failure to bring him to trial within 180 days after his written notice requires his conviction upon first-degree robbery to be vacated. Williams also asserts that the trial court erred by finding that good cause had been shown for a necessary or reasonable continuance.

---

[1] The kidnapping and attempted kidnapping charges contained in the superseding indictment, Action No. 20-CR-00160, were dismissed prior to trial.

[2] The Interstate Agreement on Detainer (IAD) is a compact that was entered into by forty-eight states, the District of Columbia, and the United States. *Parks v. Commonwealth*, 89 S.W.3d 395, 397 (Ky. 2002) (citing *New York v. Hill*, 528 U.S. 110, 120 (2000)). The purpose of the compact is "to establish procedures for resolution of one State's outstanding charges against a prisoner of another State." *Id.* at 397.

The relevant portion of the IAD is found in Article III of KRS 440.450, which provides, in relevant part:

> (1) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: **provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance**. . . .

KRS 440.450, art. III, § 1 (emphasis added).

The Kentucky Supreme Court, in *Darcy v. Commonwealth*, 441 S.W.3d 77, 82 (Ky. 2014), was tasked with interpreting KRS 500.110.[3]  Although

---

[3] Kentucky Revised Statutes (KRS) 500.110 provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of this state, and whenever during the continuance of the term of imprisonment there is pending in any jurisdiction of this state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; **provided that for good**

KRS 500.110 applies to prisoners confined to a state institution and KRS 440.450 applies to prisoners confined to an institution of a party state under the IAD, both speedy trial statutes contain identical language regarding continuances – "provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." KRS 500.110; KRS 440.450. The *Darcy* Court referred to such language concerning continuances as an "elastic clause" and noted that the statutory language clearly provides for "*any*" continuance that is necessary or reasonable where good cause is shown. *Darcy*, 441 S.W.3d at 84. The Court in *Darcy* also pointed out that the legislature utilized the word "any" to provide a clear indication that the intent was for the elastic clause "to be broadly applicable." *Id.* According to the *Darcy* Court, this broad application is only tempered by the requirement that any continuance be necessary or reasonable. *Id.*

We think the *Darcy* Court's interpretation of the elastic clause contained in KRS 500.110 equally applies to KRS 440.450. *See Dunaway v. Commonwealth*, 60 S.W.3d 563, 567 (Ky. 2001) (holding that "the reasons supporting the IAD seem to apply with equal force to the intrastate statute" and

---

**cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance**.

*Id.* (emphasis added).

-7-

that cases interpreting the IAD provide insight for cases applying KRS 500.110). Therefore, KRS 440.450 requires a prisoner to be tried within 180 days after giving proper written notice; however, any necessary or reasonable continuance may be granted where good cause is shown under KRS 440.450. And, the elastic clause is to be broadly applied. Our analysis will proceed accordingly.

In the case *sub judice*, the record reflects that Williams was indicted twice, in Action No. 20-CR-00390 and in Action No. 21-CR-00160. In Action No. 20-CA-00390, Williams' written notice pursuant to the IAD was dated June 24, 2020, and was filed in the Daviess Circuit Court on July 1, 2020. The record indicates that the trial was continued on a few occasions due to the Covid-19 pandemic. By Order entered October 16, 2020, the trial court specifically stated it was operating under Covid-19 restrictions, jurors were requesting to be excused from jury duty because of Covid-19, and the circuit clerk's office was operating with only 50 percent of its staff. Moreover, Action No. 20-CR-00390 was subsequently dismissed by Order entered June 2, 2021. In Action No. 21-CR-00160, the superseding indictment was returned against Williams on April 14, 2021. The jury trial was conducted on August 23-26, 2021, well within the 180 days provided for in KRS 440.450. Under these particular circumstances, we believe that good cause was shown to grant necessary and reasonable continuances in Action No. 20-CR-00390. As to Action No. 21-CR-00160, the facts clearly

demonstrate the 180-day rule was not violated. Therefore, Williams' contention that his statutory right to a speedy trial was violated is without merit.

Williams also asserts that the trial court erred by denying his right to a speedy trial pursuant to the Sixth Amendment of the United States Constitution and Section 11 of the Kentucky Constitution. This constitutional guarantee is applicable "to the states through the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *McLemore v. Commonwealth*, 590 S.W.3d 229, 241 (Ky. 2019) (citing *Smith v. Commonwealth*, 361 S.W.3d 908, 94 (Ky. 2012)).

It is well-settled that a defendant's constitutional right to a speedy trial is analyzed pursuant to the four-factor test set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The four-factor test requires examination of: "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant caused by the delay." *Dunaway*, 60 S.W.3d at 569. This four-factor test is a balancing approach that weighs the conduct of both the prosecution and the defendant. *Barker*, 407 U.S. at 530.

Under the analysis set forth in *Barker*, 407 U.S. 514, we must initially determine whether the length of the delay is presumptively prejudicial. *McLemore*, 590 S.W.3d at 241. The "'length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is

-9-

no necessity for inquiry into the other factors.'" *McLemore*, 590 S.W.3d at 241 (quoting *Barker*, 407 U.S. at 530). And, there is no amount of time that is presumptively prejudicial; rather the length of the delay must be viewed considering "the particular context of each case." *McLemore*, 590 S.W.3d at 241 (citation omitted). To determine whether a delay was presumptively prejudicial, two elements must be examined: "the charges and the length of the delay." *Dunaway*, 60 S.W. 3d at 569. We shall address each indictment *seriatim*.

As for the original indictment (Action No. 20-CR-00390), it was returned on June 11, 2020. Williams' trial on the superseding indictment (Action No. 21-CR-00160) was ultimately conducted some fourteen months later on August 26, 2021. The moderate complexity of the first-degree robbery charge did not contribute to the trial delay in this instance. Rather, the cause of the delay was due to the unique and critical context of the worldwide Covid-19 pandemic. The pandemic clearly constituted exigent circumstances beyond the control of the court system. The trial court scheduled Williams' trial for the first date available after the Covid-19 lockdown was lifted in Kentucky. Under the particular circumstances of this case, we conclude the fourteen-month trial delay in this instance was not presumptively prejudicial. Therefore, it is not necessary to reach the remaining factors under *Barker*, 407 U.S. at 530. As for the superseding indictment (Action No. 21-CR-00160), it was returned on April 14, 2021, and the

trial was conducted some four months later on August 26, 2021. Clearly, the four-month delay was not presumptively prejudicial and it's not necessary to reach the remaining factor under *Barker*, 407 U.S. at 530.

Williams next contends that the trial court erred by denying his motion for a directed verdict of acquittal upon robbery in the first degree as there was insufficient evidence presented at trial to convict him.

The standard of review upon a motion for directed verdict in a criminal action was articulated by the Kentucky Supreme Court in *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991):

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Id.* at 187; Kentucky Rules of Civil Procedure 50.01.

On appellate review, "the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then is the defendant entitled to a directed verdict of acquittal." *Id.* at 187. And, "[a] court must be mindful of the rule that '[c]redibility and weight of the evidence are matters within the exclusive province of the jury.'" *Reynolds v.*

-11-

*Commonwealth*, 113 S.W.3d 647, 650 (Ky. App. 2003) (quoting *Commonwealth v. Smith*, 5 S.W.3d 126, 129 (Ky. 1999)).

Robbery in the first degree is codified in KRS 515.020, which provides:

> (1) A person is guilty of robbery in the first degree when, in the course of committing theft, he or she uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he or she:
>
> > (a) Causes physical injury to any person who is not a participant in the crime; or
> >
> > (b) Is armed with a deadly weapon; or
> >
> > (c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

In this case, we believe the evidence clearly presented a reasonable basis for the jury's finding of guilt against Williams upon robbery in the first degree under KRS 515.020(a), (b), or (c). The evidence indicated that Williams, in the course of committing a theft at Cash Express, threatened and used physical force upon another person(s), Linda Rodriguez and Hayli Casebier, with the intent to accomplish the theft. Additionally, Williams caused physical injury to Rodriguez (who was not a participant in the crime); he was armed with a gun; he threatened to use the gun to shoot Rodriguez and Casebier, and he held the gun to Rodriguez's head. Considering the evidence as a whole, we conclude there was

-12-

sufficient evidence presented to induce a reasonable juror to believe beyond a reasonable doubt that Williams was guilty of robbery in the first degree. Therefore, the trial court properly denied Williams' motion for a directed verdict.

Williams next contends that the Commonwealth Attorney acted improperly in the "direct examination of Joseph Carter, placing his own credibility as a matter for the jury to weigh, requires reversal." Williams' Brief at 18. Williams concedes that this issue was not presented to the trial court and requests review under the palpable error standard of Kentucky Rules of Criminal Procedure (RCr) 10.26.

As an appellate court, we may review an unpreserved error under RCr 10.26, which provides:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

Simply stated, to constitute a palpable error under RCr 10.26, the unpreserved error must affect a substantial right of a party and result in manifest injustice. *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836 (Ky. 2003). A manifest injustice occurs where there is a "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). This Court reviews the

trial court's rulings on the admission or exclusion of evidence for an abuse of discretion. *Dooley v. Commonwealth*, 626 S.W.3d 487, 496 (Ky. 2021).

The complained of exchange between the prosecutor and Carter took place on the second day of witness testimony during trial. On direct examination by the prosecutor, Carter explained that he suffered from depression, paranoid schizophrenia, and anxiety. Carter further explained that the previous day, he had missed a dose of his medication. As a result of missing his medicine, Carter experienced a panic attack that rendered him unable to testify on the first day of witness testimony. Carter returned the following day and testified. Then, during cross-examination, counsel for Williams asked Carter whether missing his medicine sometimes led Carter to believe that people were trying to kill him. On redirect, the Commonwealth Attorney had the following exchange with Carter:

| Commonwealth: | And at least when I talked to you we didn't talk about your testimony at all, did we? |
| --- | --- |
| Mr. Carter: | No. I didn't talk to very many people. |
| Commonwealth: | Do you remember what we talked about? |
| Mr. Carter: | You trying to kill me. |
| Commonwealth: | That's what you said, right? |
| Mr. Carter: | Yeah. There was a lot of people. I really thought I was going to get hurt yesterday. |

-14-

Commonwealth: And I made the mistake, maybe, by walking in there and having a pen in my hand.

Mr. Carter: It scared me.

Commonwealth: I'm sorry. So, what's different from yesterday until today?

Mr. Carter: I'm a lot calmer. I got my medicine in me. I'm okay right now.

Commonwealth: Now yesterday you said you thought I was gonna kill you. Did I ever tell you I'm gonna kill you?

Mr. Carter: Nah.

Commonwealth: Did I ever threaten to kill you?

Mr. Carter: No.

Commonwealth: Do you think that was a rational thought that you had yesterday?

Mr. Carter: Yeah. I was going through some things yesterday.

Commonwealth: And this morning we kind of joked about it, or you did?

Mr. Carter: Yeah. Yeah.

Commonwealth: So, you know that I wasn't trying to harm you?

Mr. Carter: Not at all. I knew you wasn't. Today I knew you wasn't, but yesterday, I was scared.

Commonwealth's Brief at 19-21. Williams asserts that this exchange between the Commonwealth Attorney and Carter impermissibly bolstered Carter's explanation of why he had refused to testify the day before.

In the case *sub judice*, we simply cannot conclude that the trial court abused its discretion by not excluding the verbal exchange between the Commonwealth Attorney and Carter. However, even if an error had occurred, Williams has failed to demonstrate that such error affected Williams' substantial rights or resulted in a manifest injustice. *See Schoenbachler*, 95 S.W.3d at 836. Considering the totality of the evidence presented at trial against Carter, we do not believe that a palpable error occurred as to the above exchange between the Commonwealth Attorney and Carter during the trial.

Williams next contends the trial court erred by denying Williams' motion to alter the photographs used in a police photo lineup so that the jury would not see Williams wearing jail clothing. The lineup included photographs of six men dressed in different jail clothing. The photo lineup had also previously been shown to Rodriguez and Casebier. Williams maintains that the photographs were prejudicial as he appeared to be wearing jail clothing.

Relevant evidence is generally admissible under Kentucky Rules of Evidence (KRE) 402. Relevant evidence is defined in KRE 401 as evidence having "any tendency to make the existence of any fact that is of consequence to

the determination of the action more probable or less probable than it would be without the evidence." However, pursuant to KRE 403, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice[.]" It must be emphasized that "[t]he task of weighing the probative value and undue prejudice of proffered evidence is inherently factual and, therefore, within the discretion of the trial court." *Ross v. Commonwealth*, 455 S.W.3d 899, 910 (Ky. 2015). The improper admission of evidence is considered harmless error "if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009).

On the morning of the first day of trial, Williams objected to using the photographs from the police lineup. Williams asserted that it was obvious from the photograph that Williams was wearing jail clothing. Each man depicted in the photo lineup was wearing different colored jail scrubs. The trial court initially agreed that the photographs could be cropped to exclude view of the jail clothing. However, the following morning, the trial court expressed its concern that the cropped photographs were not the same photographs that Rodriguez and Casebier had been shown when they were asked to identify Williams. The trial court ultimately concluded that the original photographs, as shown to the victims, must be used at trial.

The photographs shown in the police lineup were clearly relevant evidence. And, relevant evidence may be excluded only if its probative value is substantially outweighed by the danger of undue prejudice. In this case, we do not believe that the photographs shown in the lineup of six men in different colored jail scrubs, depicting only the collar area of their shirts, were unduly prejudicial. In the photos, each man has on a different color shirt, and it is not readily apparent that the men were wearing jail clothing. As such, we cannot say that the trial court erred by concluding that the probative value of the original photographs was not substantially outweighed by the danger or any undue prejudice.

Williams finally contends that the trial court erred by not asking Williams if he wanted to speak on his own behalf at his sentencing hearing. Williams admits this issue is unpreserved and requests review pursuant to RCr 10.26, the palpable error rule.

RCr 11.02(1) governs sentencing hearings and provides that the trial court "shall afford the defendant and the defendant's counsel an opportunity to make a statement or statements in the defendant's behalf and to present any information in mitigation of punishment." Williams argues that the language of RCr 11.02(1) requires the trial court to specifically ask the defendant if he would like to speak. Williams cites no legal authority in support of this argument and we are aware of none. And, Williams' counsel did speak on Williams' behalf at the

sentencing hearing, arguing for concurrent sentencing with Williams' federal sentence. Therefore, we are of the opinion that the trial court did not commit reversible error by failing to ask Williams if he wanted to speak at his sentencing hearing. *See* RCr 10.26

For the foregoing reasons, the Order of Judgment and Sentence of the Daviess Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Molly Mattingly
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel J. Cameron
Attorney General
Frankfort, Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky