# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



**Supreme Court of Kentucky**

2014-SC-000362-MR

DATE 1-7-16 Enid Crowth P.C

JULIUS TACKETT <span style="float:right">APPELLANT</span>

ON APPEAL FROM PIKE CIRCUIT COURT

V.      HONORABLE STEVEN D. COMBS, JUDGE

NO. 13-CR-00176-001

COMMONWEALTH OF KENTUCKY <span style="float:right">APPELLEE</span>

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Appellant, Julius Tackett, appeals from a judgment of the Pike Circuit Court convicting him of third-degree burglary; theft by unlawful taking over $500.00; first-degree criminal mischief; and being a first-degree persistent felony offender. As a result of these convictions, Appellant was sentenced to twenty years in prison. He appeals as a matter of right.

For the reasons stated below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Joanne Mayhorn and her husband own a landscaping supply store in Pikeville. They live in an apartment above the business. One night, about an hour after midnight, Joanne, alone in the apartment, was awakened by noises coming from the downstairs business. She looked out a window and saw someone running toward the back of the building. She also saw another person driving the store's front-end loader toward the back of the building.

Shortly thereafter, she heard cracking and popping sounds from inside the store that sounded like wood breaking.

Joanne called the police. She stayed inside the apartment but from that vantage point she saw the perpetrators using the front-end loader to put the store's office safe into the Mayhorns' SUV. A neighbor, Crystal Hamilton, saw and heard the commotion from her home across the street from the Mayhorns' store. She, too, called police. Hamilton testified that she saw three people inside the store "tearing things up in there . . . moving stuff around [and] destroying it."

The police responded quickly and when police sergeant John Michael Gabbard arrived, he saw two subjects fleeing from the scene on foot. He lost sight of the fleeing suspects, but after following in the direction of their flight, he came upon Appellant lying face down in a deep ditch or creek not far from the Mayhorns' store. Appellant appeared intoxicated and was described by officers as being "disorderly and aggressive" towards them. Gabbard discovered in Appellant's pants pocket a pair of metal-cutting snips or shears. Appellant claimed that he was fishing for crawdads, but he had no equipment that might be associated with that activity.

Soon after finding Appellant, Gabbard found Appellant's brother, Jacob Tackett, lying under a bush nearby. Jacob also claimed to have been fishing, and although he had a folding box cutter knife in his pocket, no fishing gear was found. Jacob, too, appeared to be intoxicated and claimed to have walked to the area from his home in Floyd County several miles away.

2

After apprehending the Tackett brothers, officers on the scene heard a car alarm sounding nearby. When Trooper William Petry went to investigate the alarm, he heard a vehicle start up and speed away. Petry pursued the vehicle, a purple van, as it left Pike County and drove into Floyd County. Petry lost sight of the van, but he eventually found it abandoned at the end of a dirt road in Floyd County. The van was registered in the name of Shirley Tackett. Apparently, no further investigation was done to locate Shirley Tackett, or to determine if she was connected to Appellant Julius Tackett and his brother, Jacob Tackett.

Appellant and Jacob were tried jointly. Following the presentation of the evidence the jury returned a verdict convicting Appellant of third-degree burglary; theft by unlawful taking over $500.00; first-degree criminal mischief; and of being a first-degree persistent felony offender. Appellant was sentenced to twenty years in prison. This appeal followed.

Appellant argues that the trial court erred: (1) by denying his motion to dismiss the charges based upon the Commonwealth's loss of potentially exculpatory evidence; (2) by denying his request for a facilitation instruction on each of the charges; and (3) by failing to admonish the jury after the Commonwealth engaged in prosecutorial misconduct during its closing arguments. These arguments are addressed in turn.

## II. MISSING EVIDENCE

The defendant first contends that the trial court erred by failing to dismiss the charges after the Commonwealth lost evidence which Appellant

claims was potentially exculpatory evidence; specifically, a plastic tag or fob found on a key ring at the scene (key tag).[1]

From their inspection of the scene, police determined that the perpetrators had pried open the front doors of the business. Several wires running to different parts of the building had been cut. Police surmised that once inside the building, the perpetrators found the keys needed to operate the front-end loader and the SUV.

During the course of his investigation at the scene outside the building, Detective Jimmy Anderson collected a number of items that might have evidentiary value, including a pair of gloves and a key ring belonging to the Mayhorns. On the key ring were two keys, which Anderson returned to the Mayhorns, and a key tag. Anderson initially thought that the key tag may have been handled by one of the burglars, and if so, it could have some DNA on it. The key tag, however, was never submitted for DNA testing and was ultimately lost.

Appellant and the Commonwealth first learned about the key tag and its disappearance on the morning of the trial. Appellant moved for a continuance and for dismissal of the charges because of this lost "evidence." The trial court denied the requested continuance but agreed that a mistrial might be required if the missing key tag had exculpatory value. At a hearing held to resolve that issue, Detective Anderson testified that he rejected the idea of testing the key

---

[1] The item was referred to in a variety of ways including "key tag" and "little rubber tab."

4

tag for DNA because he determined that the gloves found at the scene would provide a better DNA test. He explained that his ability to have items tested for DNA was limited and he believed that testing the gloves would be more likely to provide a useful result. Although his written report indicated that the key tag had been sent to the state police lab for testing, Anderson testified that his report was incorrect in that respect. He described the mistake as an administrative error. He was unable to determine what happened to the key tag. The trial court denied Appellant's motion to dismiss. In connection with this ruling, the trial court found that Detective Anderson had not acted in bad faith in losing the key tag.

The loss of potentially exculpatory evidence in the hands of the police has possible due process implications. In *McPherson v. Commonwealth*, 360 S.W.3d 207 (Ky. 2012), we identified three elements that must be proven to establish a due process violation with respect to missing evidence, which if preserved and subjected to testing, might have produced results that exonerated the defendant. First, it must be shown that the state acted in bad faith in failing to preserve the evidence.[2] Second, it must be shown that the evidence's exculpatory potential was apparent while it was still in the hands of the police, i.e., before it was lost. And third, it must be shown that the lost

---

[2] Bad faith must be shown when the issue involves lost or missing evidence, but not where it is alleged that the state suppressed or failed to disclose material evidence with a known or readily apparent exculpatory quality. In those cases, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld. *Illinois v. Fisher*, 540 U.S. 544, 547-548 (2004) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).

5

evidence was to some extent irreplaceable. *Id.* at 217 (citing *Illinois v. Fisher*, 540 U.S. 544 (2004) and *California v. Trombetta*, 467 U.S. 479 (1984)).

Appellant's proof falls short of the standard required by *McPherson.* First, he has not demonstrated any degree of bad faith to overcome Detective Anderson's cogent and logical explanation for his decision not to send the key tag to a laboratory for DNA testing: his ability to test items for DNA was limited and the gloves were more likely to provide a meaningful result. No evidence suggested that the unexplained loss of the key tag was anything other than an inadvertence, especially since it was shown the testing lab never received it. The trial court's finding that the loss of the key tag was not a product of bad faith is supported by substantial evidence, is therefore not clearly erroneous, and is thus binding upon our review. CR 52.01.

Further, Appellant has failed to show that the exculpatory potential of the evidence was apparent before it was lost. Indeed, the exculpatory potential of the key tag is not apparent at all. It is not clear from the evidence that the item was even likely to contain identifiable DNA. And, while a test indicating the presence of DNA from Appellant or his brother would be highly indicative of guilt, a test showing the absence of their DNA or the presence of DNA from other individuals would have little or no exculpatory value since it is entirely possible that the perpetrators never handled the key tag or that they did so wearing the gloves that were also found at the scene.

Without evidence of bad faith on the part of the police and with no apparent exculpatory value, the third element of the *McPherson* test — whether

6

the lost evidence is irreplaceable — is insignificant. Accordingly, we are satisfied that Appellant's due process rights were not compromised by the failure of the police to preserve the key tag. The trial court did not err by denying Appellant's motion to dismiss the charges as a result of the missing key tag.

### III. FACILITATION INSTRUCTIONS

Appellant next contends that the trial court erred by failing to instruct the jury on the crime of facilitation as a lesser included offense to each of the principal charges. The trial court instructed the jury upon the theory of guilt by complicity, but declined Appellant's request for an instruction on the lesser offenses of facilitation.

"It is the trial court's duty to instruct the jury 'on the whole law of the case[.]'" *Darcy v. Commonwealth*, 441 S.W.3d 77, 86 (Ky. 2014) (quoting *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998)). "This duty includes presenting the jury with instructions encompassing lesser-included offenses that are supported by evidence of record." *Id.* (citing *Swain v. Commonwealth*, 887 S.W.2d 346, 348 (Ky. 1994)). We review a trial court's decision on whether to give a requested instruction for abuse of discretion. *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015).

In *Darcy*, we noted the difference between complicity under KRS 502.020(1) and facilitation under KRS 506.080(1). A defendant is complicit in the commission of a criminal offense when, with knowledge that another person is committing or intends to commit the crime, he aids or assists that

7

person with the intent that the crime will be committed. Facilitation, however, occurs when the defendant, although aware of the principal's criminal actions or intentions, provides the means or opportunity for him to commit that offense but nevertheless, lacks the intention or is "wholly indifferent to" the commission of that offense. 441 S.W.3d at 86 (citing *Thompkins v. Commonwealth*, 54 S.W.3d 147, 150-151 (Ky. 2001)).

As relevant here, the jury in Appellant's case was instructed on the offenses of third-degree burglary, theft by unlawful taking over $500.00, and first-degree criminal mischief, by "acting alone or in complicity with others." To be entitled to facilitation instructions on these charges, Appellant must show that the jury could have reasonably concluded from the evidence that he knew 1) that the actual perpetrators intended to burglarize the Mayhorns' building and to unlawfully take and damage their property, 2) that he assisted the principal actors by providing them with a means or opportunity to commit the crimes, but 3) that he remained "wholly indifferent" about the completion of the crime. Appellant has not met this burden.

The evidence disclosed that all three persons seen by witnesses were active participants in breaking into the store, carrying out the safe, attempting to load it into the vehicle, and destroying the business premises. The evidence strongly pointed to Appellant and his brother as two of those three. Their flight from the scene and apparent attempt to hide from the police, and the implausible explanation for their presence in the area of the crime, all evince a

8

consciousness of guilt and a culpable state of mind much greater than simple indifference about the commission of the crime.

Moreover, there is no evidence at all from which a jury could reasonably infer that Appellant had merely provided the actual perpetrators with a means or opportunity to commit the crimes. A facilitation verdict on any of the charges could result only from sheer speculation. The trial court did not abuse its discretion by denying Appellant's request for facilitation instructions.

## IV. PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENTS

Appellant's final argument is that the trial court erred in failing to admonish the jury to disregard the prosecutor's closing argument associating Appellant and his co-defendant, Jacob Tackett, with the purple Nissan van seen speeding away from the scene of the burglary.

As previously noted, the evidence established that the registered owner of the van was a person named Shirley Tackett. During his closing argument, the prosecutor implied Appellant's connection to the van with this remark:

> Yes, there was a third person. Ms. Mayhorn told you there was. Crystal Hamilton told you there was. *And that purple van. That's why they are charged in complicity with each other or others. And let's not forget that the purple van was registered to Shirley Tackett.*

Appellant contends that this statement was prosecutorial misconduct because there was no evidence connecting the purple van to the burglary, and more significantly, no evidence to show that Shirley Tackett was in any way associated with Appellant Julius Tackett or his brother and co-defendant Jacob Tackett. Appellant claims that by calling attention to the fact that the owner of

the van had the same last name as the two defendants, the prosecutor invited the jury to speculate about an incriminating connection.

"[A] prosecutor is permitted wide latitude during closing arguments and is entitled to draw reasonable inferences from the evidence." *Driver v. Commonwealth*, 361 S.W.3d 877, 889 (2012) (citation omitted). "While the prosecutor has a duty to confine his or her argument to the facts in evidence, the prosecutor is entitled to draw reasonable inferences from the evidence, make reasonable comment upon the evidence and make a reasonable argument in response to matters brought up by the defendant." *Childers v. Commonwealth*, 332 S.W.3d 64, 73 (Ky. 2010) (citations omitted), *overruled on other grounds by Allen v. Commonwealth*, 395 S.W.3d 451 (Ky. 2013).

The Commonwealth's reference to the purple van and its potential connection with the crime falls easily within the wide latitude accorded to prosecutors in closing arguments. Given the suspicious nature of the van's rapid departure from the area, it is reasonable to infer that the driver of the van was a likely participant in the crime and that Appellant and his brother had acted in concert with that driver. The additional factor identified by the prosecutor, that the van was owned by a person with the same surname as Appellant, was also fair comment.

Certainly, no presumption of a relationship arises from the mere fact that Appellant and the van owner have the same last name, but the jury is not required to ignore the coincidence. Appellant complains that the Commonwealth should have obtained proof to dispel any question about

10

Appellant's connection to Shirley Tackett, and hence to the suspicious van. We agree that resolving that question may have been helpful. However, we also recognize that the name of the van owner was relevant evidence, and whatever probative weight that simple fact may have is not negated by the Commonwealth's failure to conduct a more thorough investigation to tie down any evidentiary "loose ends" associated with it.

The reference to Shirley Tackett in the closing argument was just a routine summation of the evidence that had been presented to the jury. We find no error in it. The trial court correctly overruled Appellant's objection and properly declined to admonish the jury to disregard it.

## V. CONCLUSION

For the foregoing reasons, the judgment of the Pike Circuit Court is affirmed.

Minton, C.J.; Abramson, Cunningham, Noble, Keller, and Venters, JJ., sitting. All concur. Wright, J., not sitting.

11

COUNSEL FOR APPELLANT:

V. Gene Lewter
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

John Paul Varo
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General